## The Houston and Texas Central Railway Company v. Charles Mitchell.

1. A proposition in writing to deliver a specific article "*not to exceed two hundred tons*," and with no other stipulation as to quantity, payment to be made on the delivery of designated installments, which is accepted in writing, confers no right upon the party accepting to enforce delivery to the limit mentioned, and leaves it optional with each party to avoid the

agreement, on giving notice to the other, at any period during the time of delivery.

2. Under such an agreement, the party making the proposition is not bound to deliver, and the one accepting is not bound to pay, to full amount of the limit.

3. The measure of damages under such a contract is the contract price of the amount delivered before notice to stop delivery, and such actual damage as may result from notice to stop.

4. The party who seeks redress against another for the breach of contract is bound to use due diligence himself in preventing, as far as possible, the loss by reason of the breach.

APPEAL from Harris.    Tried below before the Hon. James Masterson.

The appellee sued for the entire contract price of two hundred tons of prairie hay, at $22.50 coin per ton, alleged by him to have been cut and stacked in fulfillment of his contract, and tendered for delivery to appellant's agent and by him refused, and which was never received or used by appellant.    The contract will be found copied at length in the opinion of the court.

The petition alleged that appellee, in good faith, carried out the contract, by buying a mowing machine and employing a large number of laborers to cut the hay and stack it in ricks near the line of the road ; that he cut two hundred tons and stacked it as agreed on, and made a tender of it to the duly authorized agent of the company, who accepted the tender for the company; that the company, according to contract, upon the tender of the hay expressly agreed and promised, and then became liable, to pay him $4500 coin, the contract price of the hay so cut and tendered, but that payment has since been refused ; wherefore he prays judgment for the whole price and interest.

Appellant answered, first, by a general denial of the facts alleged ; second, that the pretended agent had no authority to make or approve such a contract, and no authority to accept tender of performance ; and, third, that John E. Garey was the agent authorized to make such a

contract; that he had accepted appellee's proposal at the time alleged, but that shortly afterwards it was found that prairie hay near the railroad was so parched and burned by the summer heats that it was not suitable to be used; and that before appellee had cut any hay, and before he had incurred expenses in procuring laborers, said Garey notified appellee that the hay would not be needed, and that he should not proceed under the contract; that appellee then claimed that he had bought a mowing machine, and wished to proceed to cut the hay, whereupon said Garey offered to pay the appellee for the machine, and all other expenses he had then incurred; but that appellee refused so to do, and that, conspiring with others to wrong defendant, pretended and claimed to have the right to proceed and make money from his contract; and that if he ever did cut the hay, or tender any to any person, it was not received by, or known to any person authorized to act for appellant; and that if said agent did pretend to accept such tender of it, he acted without authority, and conspired with appellee to wrong and defraud appellant.

Appellee then amended his petition by way of replication. He denied the allegations made in the answer, especially denying that the contract was rescinded by Garey; and alleged, "that some time after he had entered into said contract, * * and after he had cut a large amount of said hay, and incurred an expense and outlay in the purchase of a mowing machine and other implements, and horses, mules and wagons, and in hiring laborers, and purchasing supplies, etc., necessary to carry out said contract, amounting to not less than $1500, said John E. Garey called on him, and requested him to let him have possession of said contract, for the purpose of bringing it down to Houston to show it to the directors of the railway, in order that he might counteract some er-

roneous impressions regarding it;" that he (Garey) had been written to about it, and wished to explain it, etc.; and that appellee refused to let him have it, "informing the said Garey that he intended to go on and complete said contract." Further, he denied that "said hay was parched and burnt up by the sun;" "on the contrary, alleges that said hay was cut from an enclosure, which had not been grazed or trampled by the cattle, and was in better condition, and was in all respects better than ordinary prairie hay;" and that appellant, at the time the contract was made, well knew the condition and character of prairie hay, the seasons, etc. He also alleged that there was no delay in the execution of the contract; "that in a very short time after making the same, and with no other delay than was necessary to prepare, he set about complying with his contract in good faith, and in a short time he cut and stacked and delivered said hay, to-wit, two hundred tons, in accordance with his contract, and tendered the same to defendants;" and that in so doing he was compelled to incur "additional expense and outlay of not less than $750." He denied all charges of conspiracy to wrong or defraud; avers that he acted in good faith, and fully complied with contract, and incurred great expense, outlay, embarrassment, labor and trouble, and that defendant acted in bad faith, etc.

The presiding judge, among other charges, gave the following, viz:

"3. After a contract is made, it is binding on all the contracting parties, and cannot be rescinded by one of the contracting parties without the consent of the other; and the party violating the contract is liable in damages for the breach of said contract."

"6. If the plaintiff cut the hay, as he alleges, and if he offered to deliver it, but was prevented by the defend-

ant from actually delivering it, by the refusal on part of defendant's agent; and if afterwards, without gross negligence on plaintiff's part, said hay was destroyed, he will nevertheless be entitled to recover."

Upon the issues thus presented the jury found for appellee the full amount of the contract, amounting to $5094, for which judgment was rendered.

*Gray & Botts*, for appellant.—*First.* As to the construction of the contract. We contend that the time, purpose and meaning of it, was to give appellee the privilege of cutting hay to the extent it might be needed by appellant, deliverable in quantities of twenty-five tons at a time, to be paid for as delivered, not to exceed two hundred tons in all; and while he was not bound to deliver the full quantity, unless he found it convenient to do so, neither was appellant bound to receive more than it needed; of course, however, subject to reasonable notice of withdrawal by either party.

It will be difficult to resist the conclusion that the parties so understood the contract at the time it was made. On the construction of contracts, we refer generally to the elementary works, and to Swisher v. Grumbles, 18 Texas, 177; Haldeman v. Chambers, 19 Texas, 39; Dorr v. Stewart, 3 Texas, 479.

But it was argued, and the court so charged, that a contract once made was a mutual transaction, which could not be rescinded without the assent of both parties. This is undoubtedly true, as a general proposition, but certainly cannot apply when the contract itself provides for such a contingency, as we contend this one does.

*Second.* As to the effect of notice to desist and refusal to carry out the contract by appellant. If we are wrong as to the true construction of the contract giving a right to rescind it, then we submit that the notice and refusal

was a breach of it, which instantly gave appellee the right of action for damages thereby incurred, but not the right to proceed and increase the damages by way of a speculation. The distinction between the right to rescind and the effect of claim of such right, being, in fact, a breach of the contract, does not appear to have been perceived by counsel for appellee nor by the court.

We submit that the mutuality of the contract ceased instantly upon the breach of it, when right of action for damages then incurred accrued to the appellee, and none whatever for his subsequent proceedings, pretended to be in fulfillment of a violated contract.

Even in cases of overseers or employees, the doctrine asserted by appellee is not sustained by former decisions of this court. There are many cases showing that immediately on the breach of such contracts right of action for damages accrues, and of course the supposed continuity or mutuality of contract ceased.

Meade v. Rutledge, 11 Texas, 52–54, is against the special court doctrine of Smith v. Lipscomb, and establishes our view. So do the cases of Hassell v. Nutt, 14 Texas, 266; Nations v. Cudal, 22 Texas, 552; and Dorr v. Stewart, 3 Texas, 479.

It was also held that where the contract is divisible, and performance is prevented by the death of the obligor, there should be an apportionment and recovery for the value of part performed. (McMullen v. Kelso, 4 Texas, 237.)

This illustrates the principle involved, though not directly in point, on the facts of this case. But the doctrine is well settled that the effect of the abandonment of a continuing contract by the obligor is to give the right to the obligee to recover for the part then performed, and damages. (Hillyard v. Crabtree, 11 Texas, 263; Carrol

v. Wield, 26 Texas, 148; Sedgwick on Measure of Damages, 215 and note.

*Third.* As to the measure of damages for the breach of the contract. We submit that it is undeniable law, in cases of contract broken, without deception or fraud or other extrinsic grounds for special damages, that the measure of damages is "compensation for the loss sustained"—that is, the actual damage at time of the breach, or necessarily resulting from it. (Sedgwick on Damages, p. 25, *et seq.*)

"In cases of prevention by the party, or tender and refusal, the plaintiff has a right of action on the special contract, prevention or refusal being equivalent to performance ; but in this case he must declare specially; * * * and the measure of damages, according to the late cases, is not the whole price agreed to be paid, but the actual loss sustained, which will consist of the value of the services rendered, and the damages sustained by the refusal to allow performance of the rest of the contract." (2 Smith's Leading Cases, 7th Am. Ed., p. 53, citing many cases ; Shannon v. Comstock, 21 Wend., 457 ; Heckler v. McCrea, 24 Id., 9 ; Wilson v. Martin, 1 Denio, 602 ; Spencer v. Halstead, Id., 606 ; Boardman, Adm'r, v. Kesler, 21 Vert., 78–84; Clark v. Marsiglia, 1 Denio, 317.)

It is held that in such cases of broken contract "it is in fact an action to recover damages for not being permitted to perform the contract." (Clark v. The Mayor, etc., 4 Coms., 339 ; Phila. R. R. v. Howard, 13 Howard, 344; Derby *et al.* v. Johnson *et al.*, 21 Vert., 18–22.)

*Crank & Wilson,* for appellee.—The construction of the contract, as given in the charge of the court, it is submitted, was eminently correct. The cardinal principle governing the construction of contracts is that of mutu-

ality.  The contract must be so construed by the court, as
to do justice between the parties, by enforcing a per-
formance of their agreement according to the sense in
which they mutually understood it at the time it was
made.  (Chitty on Contracts, p. 74; 2 Parsons on Con-
tracts, pp. 7, 8, etc.)  The whole contract should be con-
sidered in determining the meaning of any or all of its
parts.  (2 Parsons on Contracts, p. 13, note R.)  Apply-
ing these rules, it is evident that the court rightly con-
strued the contract.  From examining the contract, it is
evident that the appellee, Mitchell, was bound to cut, and
deliver as specified, two hundred tons of hay.  If he was
bound to cut and deliver this quantity, surely it cannot be
contended that the appellant was not bound to receive and
pay for that amount.  Such was the intention of the par-
ties.  The obligations of the contract were mutual.

The fact that the appellant contracted to pay for the
hay as each twenty-five tons were delivered, cannot be
fairly construed to mean that upon the delivery of any
twenty-five tons either of the contracting parties had the
right to end the contract.  This provision was evidently
intended as a mode of payment, in order to enable Mitchell
to comply with the contract, as it is evident from all the
testimony that Mitchell had but little money with which
to carry out the contract, and a payment for the hay in
installments would enable him more easily to comply with
his undertaking.

It is submitted that upon the measure of damages there
is no error in the charge of the court, and that the verdict
is just.

The rule governing the measure of damages is compen-
sation for the loss sustained.  (Sedgwick on Measure of
Damages, p. 25, *et seq.*)

The proper measure of damages for breach is the value

of the bargain. (Sedgwick on Measure of Damages, pp. 219, 220, note 1, *et seq.*

Courts will not undertake to modify the contracts of parties, but simply to expound them. (Ib., p. 220, note 1.)

In an action for breach of contract the contract price is the measure of damages, unless the defendant shows, by evidence, that the damage actually sustained is less. (Sedgwick on Measure of Damages, p. 221, note 1.)

In a late case reported in the April number of the American Law Register for 1872, of Garsed v. Turner, decided in the Supreme Court of Pennsylvania, citing and relying upon Hoy v. Grenoble, 10 Casey, 9, it was held, "That if a contract was broken by the defendant, the plaintiff is entitled to be put in the same condition, pecuniarily, as he would have been if the contract had been kept." "The plaintiff is entitled to what he would have made out of the contract had it been kept." "The proper measure of damages for breach of contract is the value of the bargain—the amount which would have been received if the contract had been kept." (See American Law Register, April number, 1872, p. 259, *et seq.*, Garsed v. Turner, and authority cited thereon.) In Smith v. Lipscomb, 13 Texas, 538, it was held, "That where a party, in whose favor something is to be done, in consideration of his promise to pay a certain sum of money, prevents that performance, and the other is not in default, the money may be recovered as if the act had been performed." (See also Rose v. Railroad Company, 31 Texas, p. 60.)

Walker, J.—This is a suit brought to recover the entire contract price of two hundred tons of hay, upon the contract of which the following is a copy:

"I propose to cut and place in ricks or stacks, for the H. & T. C. R. W., prairie hay, not to exceed two hundred tons, at points along the line of said road adja-

cent to the place where the hay may be cut, at twenty-two and one-half dollars coin per ton, payments to be made by said company as each twenty-five tons of hay is cut.

" The above proposition is made for your acceptance or rejection, as agent of the Houston and Texas Central Railway Company.

"Respectfully,

" C. S. Mitchell.

" Approved : Wm. Jenkins."

Across the face is written as follows :

" Your proposition is accepted.

" John E. Garey.

" The within proposition is accepted for and in behalf of H. & T. C. R. W. Co.

" Wm. Jenkins,<br>" Supt. of Const."

We are compelled to take a somewhat different view of this contract from that taken by counsel on either side of the case.   The contract is not mutual.   Mitchell was not bound to cut and put up any particular number of tons of hay for the appellant.   He could, if he desired, put up two hundred tons ; but if he had quit cutting when he had cut one ton, the appellant could not have compelled him to cut any more, nor could damages have been recovered for the breach ; but the evidence places the rights of the parties in this position.   Mitchell had a right to go on and put up any amount of hay within the limit of two hundred tons, unless notified by the appellant that it would not accept the hay at the contract price.   The evidence shows that about twenty-five tons of hay had been cut at the time when notice was served upon Mitchell that the company did not want the hay.   If then the contract had been mutual, Mitchell would have been

entitled to recover the contract price for the twenty-five tons of hay so cut, and his actual loss or damage by reason of the company failing to receive one hundred and seventy-five tons at the contract price.

But Mitchell was not bound to cut two hundred tons of hay, nor is the appellant bound to pay for it. Mitchell could have been stopped under this contract by a notice at any time. He probably intended to leave it optional with himself whether he cut one or two hundred tons; and thus the law leaves it optional with the appellant to take one ton or two hundred tons; but the company is nevertheless bound to take all the hay at contract price which Mitchell had put up before he was notified that the company did not want the hay. When it is claimed that the contract furnishes the measure of damages, it must not be understood that the party who is ready to perform his part of the contract can recover of a defaulting party the entire contract price. The measure of damages in such case is not the full contract price; but the damages must be measured by the actual injury sustained. If it ever was a rule that the contract furnishes the measure of damages, it is subject to the rule that compensation is only given for actual loss. (Robinson v. Varnell, 16 Texas, 382; The Cincinnati and Chicago Air Line Railroad Company v. Rogers, 24 Ind., 103; Jones v. Van Patten, 3 Ind., 107.)

Mitchell, in this case, should have observed the rule that a party who seeks redress against another for breach of contract, is bound to use due diligence himself in preventing, as far as possible, the loss by reason of the breach. Had this been a contract binding on both parties, for the sale of two hundred tons of hay, the company would have been bound by the facts in the case to pay the contract price for twenty-five tons, and the actual loss in damages which Mitchell sustained by reason of

not being allowed to fulfill the entire contract; but this was not such a contract, and all the company is bound to pay is the contract price for the twenty-five tons cut before notice. This opinion is not to exclude the plaintiff from recovering for any amount of hay cut under the contract, before notice by the company of the refusal to receive any more.

The judgment of the District Court is reversed and the cause remanded.

　　　　　　　　　　　　REVERSED AND REMANDED.