AMERICAN COTTON OIL CO. v. KIRK et al.

(Circuit Court of Appeals, Seventh Circuit. July 9, 1895.)

No. 198.

CONTRACTS—MUTUALITY.

A contract to sell and deliver 10,000 barrels of oil, at a stipulated price, in such quantities per ·week as the buyer may desire, to be paid for as delivered, but which contains no agreement on the part of the buyer to purchase and receive any particular quantity of oil, is not binding, for want of mutuality.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

This is an action brought by James A. Kirk and others, partners, doing business at Chicago, against the American Cotton Oil Company, a corporation of Ohio, doing business at Cincinnati, to recover damages for the nondelivery of a certain quantity of cotton-seed oil according to contract. The declaration set out the contract substantially as the plaintiffs' evidence tended on the trial to show it, as follows: "That the plaintiffs, at the request of the defendant, bargained with the defendant to buy from the defendant, and the defendant then and there sold to the plaintiffs, a large quantity, to wit, ten thousand barrels of prime yellow cotton-seed oil, at the price of thirty-two and one-half

FEDERAL REPORTER, vol. 68.

cents for each gallon thereof, to be delivered by the defendant to the plaintiffs, at Chicago, to wit, at the district aforesaid, in such quantities per week as the plaintiffs should desire, with the option to the plaintiffs of taking said ten thousand barrels of oil in tank cars loose instead of in barrels, at the price of thirty cents for each gallon thereof; and in consideration thereof, and that the plaintiffs had promised the defendant, at the defendant's request, to accept and receive the said oil, and to pay the defendant for the same at the price aforesaid, the said defendant, on the day first aforesaid, at the district aforesaid, promised the plaintiffs to deliver the said oil to them as aforesaid." The defendant insisted that the contract, instead of being for the sale and delivery of 10,000 barrels at the price named, until the entire 10,000 barrels should be delivered as the plaintiffs might desire and request, whether during the year 1892 or afterwards, was one simply for the sale and delivery of so much oil as the plaintiffs might order from time to time during 1892, not exceeding 10,000 barrels, at the price named. The plaintiffs testified that the contract was as stated in the declaration. Wallace F. Kirk, one of the plaintiffs, testified that Kirk & Co. had long been manufacturers of soap in Chicago, and had for many years prior to 1891 purchased oil from defendant, through Henry Bausher, the agent; that on December 23, 1891, witness, acting for Kirk & Co., concluded with Bausher an agreement whereby Kirk & Co. bought from defendant 10,000 barrels of oil at 32½ cents per gallon, or 30 cents if taken in tanks; that the oil was to be delivered, and Kirk & Co. were to take it, in such quantities per week as they might desire, and were to pay therefor 10 days after its receipt; that there was no limitation whatever upon the time in which Kirk & Co. were to receive the oil. They could, by the agreement, insist upon the delivery of the oil from time to time for the next three or four or five years. This witness also testified that, at the time the agreement was made, on December 23, 1891, he reduced it to writing in the presence of Bausher, who read it over two or three times. Thereupon, the witness produced a book, containing, as he said, the memorandum in pencil so made and read over by Bausher, which memorandum was read in evidence, and was as follows:

"Dec. 23, 1891.

"American Cotton Oil Co: 10,000 bbls. prime yellow cotton-seed oil at thirty-two and a half cents per gallon, delivered in Chicago, with the option of taking the 10,000 bbls. in tank cars loose at thirty cents per gallon. Deliveries to be made per week as Kirk & Co. desire. Payments ten days after arrival of oil at our works. This purchase made through H. Bausher, Jr., agent."

The evidence for defendant, it must be conceded, was strong, in favor of its contention relative to the contract, and was corroborated by the previous course of dealing between the parties and the conduct of the plaintiffs during 1892 in making their orders for oil. It appeared in evidence that oil was shipped from time to time to the plaintiffs during the year, as ordered by them, and paid for, to the number of 9,490 barrels, or 510 barrels less than the 10,000 provided for by the contract. Also, that in the fall of 1892 the price of oil advanced, so that the jury found the market value on January 1, 1893, to be 58 cents per gallon. The jury found a verdict for the plaintiffs for the difference in value of this 510 barrels of 50 gallons each, between 32½ cents and 58 cents per gallon. The principal issue of fact litigated on the trial was stated by the circuit court, in its charge to the jury, as follows: "For the purposes of this litigation, the question of fact for you to pass upon is whether this contract was a contract for the absolute delivery of ten thousand barrels of oil at the price named, until it was all delivered, as the plaintiff might desire and request, or whether it was a contract simply for the sale and delivery of so much oil as the plaintiffs might need in the year 1892, not to exceed ten thousand barrels." At the conclusion of the evidence, among other things, the defendant's counsel requested the court to direct the jury to return a verdict in favor of the defendant, which request was refused, and exceptions taken. Defendant's counsel also requested the court to charge the jury as follows: "If the agreement was, in substance, that ten thousand barrels of oil was to be sold by defendant to plaintiffs; that plaintiffs were to have the oil in barrels or tanks, as they might elect, the price to be thirty cents per gallon in tanks, or thirty-two and one-half cents in barrels; that defendant was to de-

liver the oil to plaintiffs at Chicago, in barrels or tanks, as plaintiffs might elect. and in such quantities per week as plaintiffs might desire, and that the price was to be paid as the oil was delivered, and ten days after the arrival of the same at plaintiffs' works,—then plaintiffs cannot recover. Such an agreement shows no obligation on plaintiffs to take the ten thousand barrels. It amounts to no more. at most, than an offer to sell ten thousand barrels. In order to make it binding as a contract, plaintiffs must have signified to defendant that they would take the oil, naming or indicating dates for deliveries of oil aggregating ten thousand barrels." This instruction was also refused, and an exception to the ruling duly taken.

J. M. Oliver and Edward Colston, for plaintiff in error.

Charles S. Holt, for defendants in error.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge (after stating the facts as above). There are several questions presented by the record in the case, but we have found it necessary to determine but one, and that is whether the contract as alleged in the declaration testified to by the plaintiffs, and found by the jury, is a valid contract for the sale and delivery of 10,000 barrels of oil, or is it invalid for want of mutuality in its provisions? A promise on the part of the defendant to sell and deliver 10,000 barrels, without a corresponding agreement on the part of the plaintiffs to purchase and receive it, would clearly be void for want of mutuality. Where, in this contract, as testified to by the plaintiffs, is there any agreement to order and receive 10,000 barrels? It is clear that the time of ordering, as well as the quantity, is left wholly to the discretion of the plaintiffs. Deliveries are to be made per week, as Kirk & Co. desire. But suppose Kirk & Co. do not desire, and do not order or order in such quantities as would require a hundred years to complete the delivery,—is there any way open to the defendant to put plaintiffs in default? We think not, and that there is no mutuality of promises for the sale of a definite or ascertainable quantity of oil. Suppose the plaintiffs had decided upon ordering six barrels of oil per week, or one barrel for every working day. That would require 32 years for the fulfillment of the contract. And we can discover no way, by the terms of the contract, whereby the defendant could put the plaintiffs in default for failure to order more oil each week, because the amount and times of ordering are left wholly to the plaintiffs. If the market price of oil should fall below the contract price, then, according to their contention as to the terms of the contract, the plaintiffs could purchase their supply of oil elsewhere, and at the lower price, resorting to the contract when, and only when, the price stated was lower than the market price,—and this without respect to time. Such a contract is one-sided, and without mutuality. If the contract had been that the plaintiffs should order and receive, and the defendant should ship, all the oil which would be required in the plaintiffs' business for a definite period, not exceeding 10,000 barrels, there would be a mutual obligation. The plaintiffs could not, in such case, order oil from other sources, and could be put at fault for not ordering and receiving all which was reasonably

required to run their plant. The case would then come within the principle of National Furnace Co. v. Keystone Manuf'g Co., 110 Ill. 427. In that case the National Furnace Company agreed to sell to the Keystone Company all of certain quality of pig iron, known as Lake Superior Charcoal Iron, which the Keystone Company would need, use, or consume in its business during the coming season from July 9, 1879, to July 1, 1880, such amount supposed by the parties to be about 700 tons. This was held to be a good contract. The court say:

"It cannot be said that the appellee [Keystone Company] was not bound by the contract. It had no right to purchase iron elsewhere for use in its business. If it had done so, appellant might have maintained an action for breach of the contract."

In the case at bar, there was no agreement on the part of plaintiffs to purchase from defendant all the oil they required in their business. They might order as little as they pleased, and supply the bulk of what they needed from other sources. The contract had the effect merely to bind the plaintiffs to receive and pay for at the stipulated price all the oil which might be shipped upon their order, from time to time, by the defendant, not exceeding 10,000 barrels. Further than that it can have no binding force, for want of mutuality. The case comes fairly within the principles announced in Railway Co. v. Dane, 43 N. Y. 240; Wilkinson v. Heavenrich, 58 Mich. 574, 26 N. W. 139; Sykes v. Dixon, 9 Adol. & E. 693; Railway Co. v. Mitchell, 38 Tex. 85; Stiles v. McClellan, 6 Colo. 89; Cool v. Cuningham, 25 S. C. 136; Davie v. Mining Co., 53 N. W. 625, 93 Mich. 491; Dorsey v. Packwood, 12 How. 126. See, also, 1 Pars. Cont. (Ed. 1893) 448. Judgment is reversed, and the cause remanded to the court below, with directions to award a new trial.