## TEXARKANA CASKET CO. v. BINSWANGER & CO. OF TENNESSEE.

(District Court, E. D. Texas. Texarkana Division. December 31, 1924.)

No. 140.

1. **Contracts ⬤�longdash10(4)—Agreement to fill orders at certain prices, without obligating buyer to place orders, held void for want of mutuality.**

An agreement by one party to fill orders for goods from the second party at stated prices, but which did not obligate the second party to give any orders, lacks the element of mutuality, and is not enforceable.

2. **Sales ⬤�longdash22(3)—Orders for goods are not in execution of void contract, unless so understood by both parties.**

Where orders were given by party to void contract, requiring one party to fill orders at certain prices but not obligating other party to place any orders, in order that they should be governed as to prices by its terms, it must have been understood by both parties that they were given and accepted with reference to it.

3. **Payment ⬤⟻longdash85(3)—Payment for goods held not recoverable on ground of mistake.**

Where plaintiff ordered goods from defendant, and paid for them at agreed prices, the fact that it supposed such prices to be the list prices of the manufacturer, because defendant had previously made an agreement without consideration, and by which it was not bound, to furnish goods at such prices, did not constitute payment under a mutual mistake of fact, which entitled plaintiff to recover the excess over such list prices.

At Law. Action by the Texarkana Casket Company against Binswanger & Co. of Tennessee. On motion by defendant for new trial. Granted.

Keeney & Dalby and King, Mahaffey & Wheeler, all of Texarkana, Tex., for plaintiff.

Arnold & Arnold, of Texarkana, Ark., and M. E. Lesser, of Memphis, Tenn., for defendant.

ESTES, District Judge. The suit here is for the recovery of something more than $4,300, paid by the plaintiff to the defendant under circumstances that are alleged in substance to be as follows: The defendant, a corporation that distributes in this section the products of the Libbey-Owens Sheet Glass Company, proposed, through an accredited officer, to the managing officer of the plaintiff, to sell to the plaintiff "all of the glass that plaintiff might desire to purchase that was manufactured by the Libbey-Owens Sheet Glass Company" at prices reflected by the "regular list price" of the Libbey-Owens Company. "The defendant agreed to sell to the plaintiff all glass or glass products of the Libbey-Owens Sheet Glass Company make at the same price that said glass or glass products could be purchased from any other dealer or jobber of said glass, and offered to fill any and all orders for Libbey-Owens glass given defendant by the plaintiff at said price—that is, at the regular list price as fixed by the Libbey-Owens Sheet Glass Company for the selling price of its glass, and at the price that it could be bought by the plaintiff from other dealers or jobbers." The proposition was accepted, and the plaintiff "agreed that thereafter the plaintiff would order such glass or glass products of the Libbey-Owens make or manufacture as it desired from and through the defendant." On various dates, set out in the petition, four carloads of glass were ordered and paid for at prices that were subsequently discovered to be in excess of the Libbey-Owens list price, to the extent of the amount sued for.

The details respecting the amount of glass purchased and the excessive charge on each car are set forth in the petition, and the claim is made that in each instance more was paid than should have been paid "under the agreement" between the parties. It is alleged that such glass could have been purchased from other dealers at the list price of the Libbey-Owens Company, and that the excessive payments were made in consequence of "the representations and agreements made * * * as aforesaid, on behalf of and for the defendant; * * * that the defendant did not comply with its said agreement, * * * but that the de-

fendant fraudulently charged and billed said various shipments of glass to the plaintiff at increased prices, as herein alleged, and the said money over and above the regular list price of said glass, which was paid by the plaintiff to the defendant, was paid without consideration, and that in law and in morals said money belongs to the plaintiff."

The answer denies the execution of the contract in question, and alleges that separate negotiations were conducted and separate contracts were executed by the parties with respect to each shipment, and that the amounts collected were in accordance with the provisions of said separate contracts. There were additional allegations and defenses pleaded, but, in view of the subsequent disposition to be made of the case, it is unnecessary to discuss the merit of them.

For the plaintiff the evidence was in substance that Mr. Krouse, the executive officer of the plaintiff, casually met, in Memphis, the manager of the defendant, and was solicited by him to order through the defendant concern such carload shipments of glass of a certain kind as plaintiff might need in the future. The representation was that the defendant had recently become a sort of distributing agency in that section for the Libbey-Owens products, and the patronage of an enterprise of the size and character of the plaintiff would inure to the defendant's benefit. For such considerations, the proposition was made to sell to the plaintiff carload lots of glass at the regular list price of the Libbey-Owens Company, and was accepted with the qualification that the plaintiff was not under obligations to order all, or even any, of the glass referred to that it might need. In other words, only such orders as the plaintiff might see fit to send were to be filled on the terms indicated; and the plaintiff did not have to, and in fact did not, buy all of its requirements for glass of the kind involved from the defendant.

The contract referred to was negotiated during the month of October, 1921. In January following the plaintiff made inquiry of the defendant respecting the price of glass of specified dimensions, was quoted a definite price, and a car was ordered on the terms thus quoted. Similar procedure was followed with respect to all of the other cars excepting the fourth, where there was no request for quotation of price, but the order was to send the goods at the current price. The plaintiff's manager, who gave these orders, testified that he thought, when the quotations were received and the orders given, that they were from the list price, as provided in the contract, and that he could have gotten glass of another make elsewhere at list prices.

The testimony in behalf of the defendant tended to sustain the allegations in the answer. The correspondence and quotations relating to each car were in evidence, and there was no controversy in the testimony on any material point, except with respect to the initial conversation or contract, on which, as I construe the pleading, the right to recover is founded.

The issue thus raised was submitted to the jury under instructions that required the verdict to depend upon answers to three questions. The first was whether the contract referred to was in fact made; the second, whether the orders that were given to the defendant were given in reliance on the part of the plaintiff on said contract. The jury were told that, if either of said questions were answered in the negative, the verdict should be for the defendant; but, if both were answered in the affirmative, the third question, which had to do with the difference between the amount paid and the amount of the list price, should be considered, and that the verdict, in such event, should be in favor of the plaintiff for the amount of such difference.

The verdict was for the plaintiff, and the defendant has filed a motion for a new trial, in which the point, among others, is made that its motion at the close of the testimony to direct a verdict in its favor should have been granted, and that thus, despite the verdict of the jury, the plaintiff is not entitled to recover.

It must be assumed, for the purposes of the motion, that the verbal contract in question was in fact made, and that the orders for the glass were given by the plaintiff upon the strength of such agreement. It follows that, unless the contract is unenforceable for some reason, the plaintiff is entitled to recover; or, to put it another way, the defendant is responsible if a legal obligation to sell the plaintiff the goods at the list or factory price rested, under all the circumstances, on it.

[1] I think there can be no question that the contract itself, as the terms of it were detailed by Mr. Krouse, lacked the element of mutuality. The orders to be given to the defendant were conditioned entirely upon the plaintiff's "will, wish, or inclination." It was under no obligation to order all, or

even any, of its requirements from the defendant, and it did in fact order some cars from other concerns. The authorities are practically unanimous that such an arrangement is not an enforceable contract, and involves no obligation, from the standpoint of law, on either party. "A promise to furnish, deliver, or receive specified articles at certain prices, without any agreement to order or to accept any amounts or quantities of the articles, is without binding force or effect, because neither party is thereby bound to deliver or to accept any quantity or amount whatever." Cold Blast Transportation Co. v. Kansas City Co., 114 F. 80, 52 C. C. A. 25,.57 L. R. A. 696; American Cotton Oil Co. v. Kirk, 68 F. 791, 15 C. C. A. 540; Santaella & Co. v. Lange, 155 F. 719, 84 C. C. A. 145; Crane v. Crane & Co., 105 F. 869, 45 C. C. A. 96.

It is well settled that a contract, originally unenforceable, may be made into a good and binding arrangement when executed by one of the parties and its benefits accepted by the other. Harvester Co. v. Mitchel (C. C.) 89 F. 174. "A contract, when executed by one party, is a sufficient consideration for the agreements of the other, without reference to the obligatory character of the agreements that have been performed." Harvester Co. v. Mitchel, supra.

The theory on which this doctrine is based is, as applied to goods ordered and delivered under such a contract, that a sale is thereby consummated at the prices provided in the contract—not that the contract itself is good. Cold Blast Co. v. Kansas City Co., supra. "Accepted orders for goods under * * * void contracts constitute sales of the 'goods thus ordered at the prices named in the contracts, but they do not validate the agreements as to articles which the one refuses to purchase, or the other refuses to sell or deliver, under the void contracts, because neither party is bound to take or deliver any amount or quantity of these articles thereunder." Crane v. Crane & Co., supra; Oil Co. v. Kirk, supra; Campbell v. Lambert, 36 La. Ann. 35, 51 Am. Rep. 1; Railway Co. v. Mitchell, 38 Tex. 85; Ashcroft v. Butterworth, 136 Mass. 511.

It is also well settled that, "where money is paid to another under the influence of a mistake of fact—that is, on the mistaken supposition of the existence of a specific fact which would entitle the other to the money—and the money would not have been paid if it had been known to the payer that the fact was otherwise, it may be recovered." 21 R. C. L. 164.

[2, 3] Counsel very earnestly contend that these exceptions are applicable to the facts here. But I do not think so. In order to recover on the theory of an executed contract, the transaction must have been conducted with the contract in mind by both parties, or a presumption to that effect indulged. In other words, the evidence would have to show that neither party, when making the sales, can be said to have regarded the arrangement as rescinded. Harvester Co. v. Mitchel, supra; Crane v. Crane & Co., supra. And, as regards the theory of mistake, the mistake must have been one of fact, and, as applied to the evidence here, a mutual one. There was no mistake as far as the defendant in this case is concerned, nor was the contract in its contemplation. It did not pretend to sell or to fill these orders, except on the terms disclosed by the correspondence.

So, from any phase of the testimony, the recovery must be based on a breach of the original contract, and in that state of affairs a valid or enforceable contract must be shown. Instead of that, a unilateral engagement is shown which, at the beginning of the transactions between these parties, was repudiated by the defendant. If the plaintiff had the wrong impression respecting the price quoted in the correspondence, and acted on that impression, as the verdict shows was the case, it must still be shown that the defendant owed a legal duty to quote the list price, and to sell from the list price, before a recovery can be had. That, in turn, depends on the obligations imposed by the contract itself. Since the contract, as we have said, could not be enforced as such, it seems to me that under no sound theory of law can the judgment rendered here be permitted to stand.

It is therefore the order of the court that the judgment heretofore rendered be set aside, and a new trial granted.