## BROWN v. FAULK.

### No. 12126.

Court of Civil Appeals of Texas.
San Antonio.
June 7, 1950.

Rehearing Denied July 5, 1950.

Robert H. Wallace, San Antonio, Dibrell & Gardner, San Antonio, for appellant.

Wm. W. Beuhler, San Antonio, for appellee.

W. O. MURRAY, Chief Justice.

This suit was instituted by Reynolds Faulk against O. M. Brown, seeking to recover the amount of principal, interest and attorney's fees due upon a certain promissory note in the principal sum of $10,256.-62, dated February 14, 1949, and for the foreclosure of a chattel mortgage lien upon a truck, certain livestock, crops and other personal property given for the purpose of securing said note. The chattel mortgage contained an agreement whereby defendant obligated himself to deliver and sell to plaintiff, who operated a creamery, the entire production of milk from defendant's dairy so long as the defendant was indebted to the plaintiff, regardless of whether any such indebtedness shall have arisen before the date of such chattel mortgage, or be evidenced by the note, or shall arise in some future transaction. Plaintiff further sought to recover judgment for the sums of $455.43 and $3,615 alleged to be due and owing by defendant to plaintiff. Plaintiff also alleged that it was necessary to appoint a receiver to take care of the mortgaged property of defendant and to protect the rights of the plaintiff, alleging as his reason for such appointment of a receiver, that the property in question was probably insufficient to discharge the mortgage debt.

Hearing was had upon plaintiff's application to have a receiver appointed and the court entered an order appointing a receiver of the property of defendant covered by the chattel mortgage and perhaps other property, and incidental thereto a temporary injunction. From this order defendant, O. M. Brown, has prosecuted this appeal.

Appellant's first contention is that the note and chattel mortgage were illegal and void because of the provision and agreement that appellant would sell exclusively to appellee his entire production of milk from his dairy. It is contended that this provision is in restraint of trade and is in violation of the Anti-Trust Laws of the State of Texas. Vernon's Ann.Civ. St. art. 7426 et seq. We overrule this contention. It is apparent from the provisions of the chattel mortgage that there was no agreement as to what price appellant was to be paid for his milk, nor was appellee bound in any way to purchase the milk. In the absence of expressed provisions along this line, it will be presumed that appellee merely had an option to purchase the milk and to pay for it at the prevailing price. The question was raised by exceptions to the petition and by objections to the introduction of the note and mortgage in evidence. There was no evidence introduced tending to show the surrounding circumstances or that there was any monopoly or illegal combination in existence of which the provision in the chattel mortgage was a part and parcel. The note carried pro-

visions that it could be paid in certain installments prior to its maturity, and, furthermore, that this agreement by appellant to sell all of his milk to appellee was to continue only so long as appellant was indebted to appellee. Such facts fall far short of showing an agreement in restraint of trade, or one that violates the State Anti-Trust Laws. A producer of milk has the right to contract or sell all of his production to one person if he sees fit to do so, and such an agreement is not an illegal contract in the absence of a showing that the intention was to form a monopoly or an illegal combination in restraint of trade.

The authorities cited by appellant, Wright v. Southern Ice Co., Tex.Civ.App., 144 S.W.2d 933; Rawleigh Co. v. Harper, Tex.Civ.App., 7 S.W.2d 892; Henderson Tire & Rubber Co. v. Roberts, Tex.Com. App., 12 S.W.2d 154; Wood v. Texas Ice & Cold Storage Co., Tex.Civ.App., 171 S.W. 497; are not in point, in that the fact situations in those cases are quite different from the facts in the present case. In the case of Wright v. Southern Ice Co., Tex. Civ.App., 144 S.W.2d 933, 936, which comes nearest to being in point, the contract was that Wright would not buy any ice cream from any person or concern other than Southern Ice Company. The court held such a contract violated the provisions of our Anti-Trust Statutes, art. 7428, Vernon's Ann.Civ.Stats. The court in deciding that case did say that: "Any contract by which one party is to sell his entire output to, or to take his entire requirements of a commodity from, the other is contrary to our statute forbidding monopolies. Rawleigh Co. v. Harper, Tex.Civ.App., 7 S.W.2d 892."

We think this statement went much further than was necessary for the court to go to justify that decision, and it cannot be accepted as a correct and infallible rule of law applicable to any and all cases. Art. 7428, supra, does not so provide. This case comes nearer sustaining appellant than the other cases cited.

In 58 C.J.S., Monopolies, § 52, p. 1032, it is stated: "At common law, it has been held, a contract by which a manufacturer agrees to sell all goods or products manufactured or produced by him to one person or corporation is not unlawful as in restraint of trade or as creating or tending to create a monopoly, in the absence of allegation or proof to show that these conditions will result."

■ We are of the opinion that when Brown, appellant, who was indebted to Faulk, appellee, agreed to sell, presumably at prevailing prices, all of the milk he might produce from his dairy, so long as such indebtedness existed, such contract would not be illegal and void as being in restraint of trade or in violation of Anti-Trust Laws, in the absence of proof that the intention was to create an unlawful combination in restraint of trade. One dairyman agreeing to sell all of his milk to one creamery to which he is indebted, so long as the indebtedness exists, is not on its face an unlawful combination in restraint of trade.

■ Appellant next contends that the trial court erred in appointing a receiver because the evidence did not show that the mortgaged property was not of sufficient value to pay the existing indebtedness but, on the contrary, was more than sufficient to pay such indebtedness. We overrule this contention. Appellant's own testimony was confusing as to what property was actually covered by the mortgage and it raised serious doubt as to whether he owned the property described in the mortgage at the time he gave the mortgage. This suit was for the sum of $8,587.14, the balance due on the note, together with other sums of $455.43 and $3,615. When the 10% attorney's fee is added the total amount due is approximately $14,000. Appellant further testified that there were some 90 to 100 cows on the two places operated by him. He admitted that 34 of these cows were mortgaged to one John Grissom to secure a balance due him of $4,000. He also admitted that 31 cows belonged to his son and were covered by a mortgage to the Alamo National Bank. He also admitted that every cow at his place was mortgaged. John Grissom testified that these cows were worth the sum of $300 per head. The trial court may have concluded this was a little high for ordinary milch cows. Regardless

of this, the testimony on the whole indicated that appellee's indebtedness was not very well secured.

The trial judge, after a full hearing, saw fit to grant the application for a receiver. This was a matter largely addressed to his discretion. McMillen v. North American Building & Loan Ass'n, Tex.Civ. App., 75 S.W.2d 161. Art. 2293, Vernon's Ann.Civ.Stats., provides for the appointment of a receiver: "2. In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property * * * that the condition of the mortgage has not been performed and the property is probably insufficient to discharge the mortgage debt."

Whether the mortgaged property was probably insufficient to discharge the mortgage debt was a matter to be decided in the first instance by the trial judge from the preponderance of the evidence. The credibility and weight to be given to the testimony was a matter to be determined by him. Myrick Inv. Co. v. Amicable Life Ins. Co., Tex.Civ.App., 183 S.W.2d 700.

From a reading of the entire record, we cannot say that the trial judge abused his discretion in appointing a receiver. Richardson v. McCloskey, Tex.Civ.App., 228 S.W. 323.

Appellant next contends that in any event the court erred "in appointing a receiver over all of the cattle, milch cows, bulls, sheep, goats, horses and mules owned by the appellant and/or in his possession and over all tools, implements and equipment of husbandry owned by the appellant and/or in his possession, and all milking machines and dairy equipment owned by the appellant, one Dodge one-ton express truck and all crops owned by the appellant, for the reason that there is no pleading authorizing such an order." We overrule this contention. The mortgage, by its express terms, in addition to covering the specific personal property described therein, also covers "All other cattle * * * now owned by or that may hereafter be acquired by the Mortgagor, including the increase of and to any of such livestock; and all crops * * *." Said mortgage also pro-

vides that it covers "the following described personal property, together with any and all appurtenances, connections, fixtures and additions, attached and/or appertaining, and also upon all additions and improvements * * * and also upon all future earnings, income, and increase of and arising from and in connection with any of said property." These provisions of the mortgage were broad enough to include all of the property covered by the order granting the receivership.

Appellant next contends that "the trial judge erred in entering, on its own motion, a temporary injunction enjoining the appellant from selling, transferring, pledging, incumbering, mortgaging, or disposing of any property which is in his actual or constructive possession and/or which is owned by him and/or in which he may have an interest, etc., for the reason that there were no pleadings calling for such an injunction and there was no bond required by the court of the appellee prior to the issuing of this temporary injunction." We overrule this contention. The trial court having before it a suit on a note and to foreclose a chattel mortgage, and having granted a receivership as incidental to the main suit, it had the jurisdiction, on its own motion, to grant such temporary injunction as it deemed proper to make the receivership effective. Ex parte Lee, 127 Tex. 256, 93 S.W.2d 720; City of Dallas v. Wright, 120 Tex. 190, 36 S.W.2d 973, 77 A.L.R. 709; Bowlen v. Bowlen, Tex.Civ. App., 1 S.W.2d 355; art. 1914, Vernon's Ann.Civ.Stats.; § 8, art. 5, Texas Constitution, Vernon's Ann.St.

Appellant next contends that the court erred in refusing to set the amount of a supersedeas bond. We sustain this point. Rule 364, T.R.C.P., provides for the giving of supersedeas bonds generally and the provisions of Rule 385, T.R.C.P., clearly show that a supersedeas bond may be given where an appeal is taken from an interlocutory order appointing a receiver. In Shell Petroleum Corporation v. Grays, 122 Tex. 491, 62 S.W.2d 113, 117, Judge Critz, speaking for the Commission of Appeals, said: "It is evident from a reading of the above

statutes that article 2250 gives the right of appeal from an interlocutory òrder appointing a receiver, but this article does not grant the right of a supersedeas pending such appeal. The right to supersede judgments and orders is conferred by articles 2270 and 2275, supra. When we consider the two articles last mentioned, it is evident that they grant the right to supersede interlocutory as well as final judgments. There is therefore no escape from the conclusion that an order appointing a receiver may be superseded on appeal unless there are some other statutes than articles 2270 and 2275 which take away such right. It is contended by appellees that article 2250, supra, has effect to take away the right to supersede an order appointing a receiver. We disagree with such contention."

Article 2250 has been amended, but its effect, as far as the matter Judge Critz was discussing, has not been changed. Art. 2270 and art. 2275 have been repealed by the Rules of Civil Procedure, but similar provisions are now to be found in Rules 364 and 368, R.C.P.

Justice Critz, in speaking for the Supreme Court in Ex parte Klugsberg, 126 Tex. 225, 87 S.W.2d 465, 468, where an appeal had been taken from an interlocutory order appointing a receiver by simply giving an appeal bond, said: "Of course, had the appeal been by supersedeas, a different question would be presented. Shell Petroleum Corporation v. Grays, [supra]." again indicating that an order appointing a receiver may properly be superseded on appeal.

■ Appellant contends that, inasmuch as the order appointing a receiver also included an order granting a temporary injunction, such order could not be superseded, citing Oak Downs v. Watkins, Judge, Tex.Civ.App., 85 S.W.2d 1100, and Mayhew v. Power, Judge, Tex.Civ.App., 104 S.W.2d 642. These cases are clearly not in point. The appeal in those cases as to supersedeas was governed by art. 4662, while in the present case the injunction was simply incidental to the receivership and for the purpose of making it effective. The fact that appellant first gave an appeal bond before asking for a supersedeas did not affect his right to have the amount of the supersedeas bond fixed by the trial court. Heath v. Elliston, Tex.Civ.App., 135 S.W.2d 512. The trial judge erred in not fixing the amount of a supersedeas bond. However, the sustaining of this point does not require a reversal of the order granting the receivership.

The order appealed from is affirmed.