**PHOENIX BIT & TOOL, INC., Appellant,**

v.

**TEXACO INC., Texaco Producing Inc., Texaco Oils Inc., Four Star Oil and Gas Company, and Texaco Services Inc., Appellees.**

No. B14–93–00158–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 9, 1994.

Rehearing Denied July 21, 1994.

Robert D. Lemon, Mitchell G. Ehrlich, Lemon, Shearer, Ehrlich, Phillips & Good, P.C., Perryton, for appellant.

John Sullivan, Denver, William T. Hankinson, Lori L. Dalton, Dallas, for appellees.

Before SEARS and LEE, JJ., and MORSE, J., Sitting by Designation.

## MAJORITY OPINION

MORSE, Justice.

This is a summary judgment case. Appellant, Phoenix Bit & Tool, Inc., brought a breach of contract suit against appellees, claiming that a contract gave appellant the exclusive right to purchase used drill bits. Appellees, Texaco Inc., Texaco Producing Inc., Texaco Oils Inc., Four Star Oil and Gas Company, and Texaco Services Inc., moved for summary judgment and the trial court granted this motion. Appellant raises one point of error. We affirm.

In 1986, Texaco sent out an invitation for bids on a proposed blanket order covering the sale of used drill bits. Texaco awarded the contract to Phoenix and a blanket order, dated September 16, 1986, was prepared by Texaco providing that it covered the following material: "Such quantities of used drill bits in various sizes, that Seller may want to dispose of from the Denver, Los Angeles, Midland and New Orleans operations of [Texaco]." The contract effective term was from September 15, 1986 through March 15, 1987, but the contract continued thereafter. The contract provided for termination upon thirty days written notice. Phoenix gave Texaco thirty days written notice and the contract was terminated on March 8, 1991.

Phoenix filed suit against appellees, contending that the contract gave Phoenix the *exclusive* right to buy all of the used drill bits Texaco wanted to dispose of and that Phoenix was obligated to purchase such bits. The trial court entered a mediation scheduling order and the parties commenced mediation on September 11, 1992. The mediation was immediately recessed for three months because Texaco requested time to complete an audit of their records regarding used drill bits sold by Texaco. On this same day, Texaco filed a motion for summary judgment, which the court granted.

In point of error one, Phoenix contends the trial court erred in granting Texaco's motion for summary judgment. Under this broad point, Phoenix presents the following arguments: (1) the trial court violated Texas public policy, as stated in TEX.CIV.PRAC. & REM.CODE ANN. §§ 154.002, 154.003, in granting Texaco's motion pending the results of an on-going mediation proceeding which the court had ordered on its own motion; (2) the rules of construction for an unambiguous contract call for an interpretation granting the buyer the exclusive right to purchase such used drill bits that the seller may want to dispose of; (3) the exclusive right to purchase does not render the contract illegal and unenforceable pursuant to the Texas anti-trust statute; (4) the intent of the parties under the contract must be drawn exclusively from the language used in the contract and not from extrinsic evidence; and (5) alternatively, the contract is ambiguous and genuine issues of material fact were present regarding the intent of the parties to the contract.

In reviewing a summary judgment, we must determine whether the movant has shown that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). In deciding whether or not there is a disputed fact issue, we must take as true all evidence favorable to the non-movant, indulging all reasonable inferences and resolving all doubts in the non-movant's favor. *Id.* at 549.

Phoenix first claims the trial court violated public policy by granting summary judgment while mediation was on-going. Public policy regarding mediation is stated in the following statute:

> It is the policy of this state to encourage the peaceable resolution of disputes, with special consideration given to disputes involving the parent-child relationship, including the mediation of issues involving conservatorship, possession, and support of children, and the early settlement of pending litigation through voluntary settlement procedures.

TEX.CIV.PRAC. & REM.CODE ANN. § 154.002 (Vernon Supp.1994). Section 154.003 imposes upon all trial and appellate courts the responsibility of implementing this policy. TEX.CIV.PRAC. & REM.CODE ANN. § 154.003 (Vernon Supp.1994). Other than these statutes, Phoenix admits there is no law supporting its argument.

Appellees respond that Phoenix waived this argument by failing to present it to the trial court and that no authority supports this argument. We agree with appellees that Phoenix's argument is without merit. Phoenix did not seek an order staying the summary judgment proceedings pending the outcome of mediation. Furthermore, summary judgment is a method for orderly disposition of cases.

Phoenix next claims that the rules of construction require a finding that the contract granted Phoenix the exclusive right to purchase Texaco's used drill bits. Both parties contend the contract is unambiguous.

Where there is no ambiguity, the construction of a contract is a question of law for the court. *Westwind Exploration, Inc. v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 382 (Tex.1985). In interpreting contracts, the primary concern is to ascertain and give effect to the intentions of the parties as expressed in the instrument. *Zieben v. Platt*, 786 S.W.2d 797, 800 (Tex.App.—Houston [14th Dist.] 1990, no writ).

██ Based on these rules of construction, Phoenix contends that the language of this contract expresses the intent that Phoenix was to have an exclusive right to purchase drill bits that Texaco wanted to sell. In support of this contention, Phoenix cites *Ives v. City of Willimantic*, 121 Conn. 408, 185 A. 427 (1936). In *Ives*, the city contracted to sell "such quantity of ice ... as the city owns or shall harvest [in] that period of time...." *Id.* 185 A. at 427. Because the contract stated that the quantity of ice to be sold was the amount the city "shall harvest," the Connecticut court held that the city was only bound to sell ice to Ives if any ice was harvested, but that the plain language of the contract did not require the city to harvest any ice. *Id.* 185 A. at 428.

This case does not support appellant's position. In fact, this case supports appellees' argument that Texaco was not obligated to sell any, much less all, used drill bits to appellant. The language of the blanket order indeed does not require Texaco to sell Phoenix such drill bits as it *shall* dispose of. Rather, the contract allows Texaco to sell Phoenix such drills as it *wants* to dispose of. Thus, the plain language of this order reveals that there was no intent to require Texaco to sell all used drill bits to Phoenix. Absent any indication of intent, we may not imply an obligation on Texaco's part to sell drill bits exclusively to Phoenix. Were we to imply an obligation by Texaco to sell all used drill bits exclusively to Phoenix, as Phoenix suggests, we would be revising the order and creating an agreement different from that actually entered by the parties. We are not at liberty to do this. *See General Am. Indem. Co. v. Pepper*, 161 Tex. 263, 339 S.W.2d 660, 661 (1960).

Appellees argue that the plain language of the contract reveals no mutuality of obligations. In support of this argument, Texaco cites *Texarkana Casket Co. v. Binswanger & Co.*, 3 F.2d 611 (E.D.Tex.1924) and *Streich v. General Motors Corp.*, 5 Ill.App.2d 485, 126 N.E.2d 389 (1955). Texaco did not expressly raise this specific argument in its motion for summary judgment and thus, lack of mutuality may not be raised for the first time in the appellate court. *See McConnell v. Southside Indep. School Dist.*, 858 S.W.2d 337, 341 (Tex.1993).

██ Phoenix next challenges the summary judgment on the ground that an exclusive right to purchase does not render the contract illegal and unenforceable pursuant to the Texas antitrust statute. Although appellees raised this illegality argument in the trial court, they do not argue it on appeal as a ground for affirming the judgment.

The statute upon which appellees relied in the trial court was TEX.BUS. & COM.CODE ANN. § 15.05(c) (Vernon 1987), which provides:

> (c) It is unlawful for any person to sell, lease, or contract for the sale or lease of any goods, whether patented or unpatented, for use, consumption, or resale or to fix a price for such use, consumption, or resale or to discount from or rebate upon such price, on the condition, agreement, or understanding that the purchaser or lessee shall not use or deal in the goods of a competitor or competitors of the seller or lessor, where the effect of the condition, agreement, or understanding may be to lessen competition substantially in any line of trade or commerce.

We first note that this statute does not make unlawful any required exclusivity of a *seller's* committment to deal only with the *purchaser*, and not the purchaser's competitors. Thus, we find that the language of the statute itself indicates its inapplicability to our facts. Furthermore, the case law construing this statute reveals another basis for upholding the trial court's judgment.

In *Brown v. Faulk*, 231 S.W.2d 743, 744 (Tex.Civ.App.—San Antonio 1950, orig. proceeding), the appellant alleged that a note and chattel mortgage were void because it

required appellant to sell all of his milk to appellee. The court disagreed, saying:

> A producer of milk has the right to contract or sell all of his production to one person if he sees fit to do so, and such an agreement is not an illegal contract in the absence of a showing that the intention was to form a monopoly or an illegal combination in restraint of trade.

*Id.* at 745. The court also noted that the chattel mortgage contained no agreement regarding price and did not bind appellee to purchase the milk. *Id.* at 744.

 In *Cooper v. Fortney*, 703 S.W.2d 217 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.), a panel of this court noted the differences between output contracts and ordinary supply contracts. An output contract "measures the quantity to be sold by an amount equal to the seller's total good-faith output" and even if it requires the sale of products exclusively to one buyer, it is usually not a violation of Texas antitrust laws. *Id.* at 219. An ordinary supply contract "measures the quantity to be sold by stating a specific, fixed amount" and such a contract requiring the sale of the product to one buyer may violate antitrust laws. *Id.* Even if the court determines that the contract is an ordinary supply contract, it does not violate antitrust laws unless its provisions unduly restrict trade. *See id.*

The blanket order did contain information about price, but it did not bind appellees to sell all used drill bits or to sell all of them to appellant. Consequently, we do not find his order to be either an output contract or an ordinary supply contract. We have scrutinized the provisions of the order and we find no intention to form a monopoly or an illegal combination in restraint of trade. In fact, the order does not even require appellees to sell anything to appellant. Thus, we find no illegality or violation of the Texas antitrust statute and this ground cannot support the summary judgment.

Appellant also complains that Texaco relied on inadmissible extrinsic evidence that the trial court should not have considered in ruling on the motion for summary judgment. Even if it was error for the trial court to consider the affidavits submitted by Texaco,

any such error is harmless because the lack of intention to create an exclusive obligation to sell drill bits to Phoenix is apparent from the express language of the order. *See Medical Towers, Ltd v. St. Luke's Episcopal Hosp.*, 750 S.W.2d 820, 822–24 (Tex.App.—Houston [14th Dist.] 1988, writ denied).

Finally, Phoenix argues in the alternative that the contract is ambiguous and that genuine facts issues exist regarding the parties' intent. A written instrument is not ambiguous if it is so worded that it can be given a certain or definite legal meaning or interpretation. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). We find no error by the trial court in determining that the provisions of the blanket order could be given a definite legal meaning. We overrule appellant's point of error.

We affirm the judgment of the trial court.

LEE, Justice., dissenting.

Because I disagree with the majority's holding that the contract does not give appellant the exclusive right to buy all used drill bits that appellees dispose of, I respectfully dissent. I would hold that appellees failed to meet their summary judgment burden of proving (1) that the contract does not give appellant the exclusive right to buy the used drill bits appellees dispose of, and (2) failed to prove that such a construction renders the contract unenforceable.

The contract in question is a form "sale order" covering "sale of [the following materials] on 'as is—where is' basis:"

> MATERIAL: Such quantities of used drill bits in various sizes, that Seller, may want to dispose of from the Denver, Los Angeles, Midland and New Orleans operations of:
>
> Texaco Inc.—Producing
>
> Texaco Producing Inc.
>
> Texaco Oils Inc.
>
> Getty Oil Company

Appellees asserted in their motion for summary judgment the following arguments:

> (1) the language of the contract is inconsistent with appellant's position that it had

the exclusive right to purchase used drill bits from appellees; and

(2) even if the contract does give appellant the exclusive right to purchase used drill bits from appellees, the contract is illegal and unenforceable under the Texas Antitrust Statute, TEX.BUS. & COM.CODE ANN. § 15.05(c) (Vernon 1968).

In support of its claim that the contract did not give appellant the exclusive right to purchase used drill bits, appellees attached the affidavits of four of its employees, including Richard N. Johnson, the custodian of the blanket orders and a senior buyer in the Purchasing Department, J.E. Toumbs, a senior clerk, H.O. Baker, a materials coordinator, and T.W. LeBlanc, a yard foreman. Johnson testified that appellees did not intend to give appellant an exclusive right to purchase used drill bits. Toumbs testified that, on two occasions, appellant refused to purchase drill bits offered. Baker testified that communication with appellant was difficult, they often failed to keep appointments, and they were selective about the drill bits they would purchase. LeBlanc testified that appellant failed to keep appointments, was often late, and that he was never advised that appellant was to only company to whom he could sell used drill bits.

We may not consider any of this summary judgment proof because to do so would violate the rules of contract construction. In construing a contract, we are to "take the wording of the instrument, considering the same in the light of the surrounding circumstances, and apply the pertinent rules of construction...." *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex.1981). If the contract is unambiguous, we must give effect to the parties' intention as expressed or as is apparent in the writing. *Id.* Usually, the intention of the parties will be determined from the instrument alone because it is the objective, and not the subjective, intent that controls. *Id.* Parol evidence is inadmissible to render a contract ambiguous, which on its face can be given a definite legal meaning. *Id.* at 732. Neither party contends the contract is ambiguous; therefore, we may not consider the extrinsic evidence attached to appellees' motion. *See id.*

Furthermore, we should construe a contract in such a way as to make the obligation imposed on the parties mutually binding. *Portland Gasoline Co. v. Superior Marketing Co.*, 150 Tex. 533, 243 S.W.2d 823, 824 (1951). This coincides with the rule that courts should construe contracts in a way that renders them effective, rather than ineffective. *Id.; Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1980).

Appellant argues that if we construe this contract to deny an exclusive right to buy appellees' used drill bits, there is a lack of mutuality of obligation rendering it unenforceable and such a construction would violate the rules of contract construction. The majority holds that the contract does not give appellant the exclusive right to buy all used drill bits appellees want to dispose of. This holding means that appellees are not obligated to sell the drill bits to appellant, but may sell to whomever they wish. Where a contract imposes no definite obligation on one party to perform, it lacks mutuality. *Bank of El Paso v. T.O. Stanley Boot Co., Inc.*, 809 S.W.2d 279, 285 (Tex.App.—El Paso 1991), *aff'd in part, rev'd in part on other grounds*, 847 S.W.2d 218 (Tex.1992). I disagree with the majority's approach because it renders the contract unenforceable for lack of mutuality.

Appellant contends that the language of the contract creates an output contract. An output contract is one in which the quantity of materials sold consists of the seller's good faith output. *Cooper v. Fortney*, 703 S.W.2d 217, 219 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). Even if an output contract requires the seller to sell only to one buyer, it is usually not violative of Texas antitrust laws. Because this contract gives appellant the right to purchase those used drill bits that appellees want to dispose of, I would hold that the contract in question is an output contract, for which the quantity of drill bits sold consists of appellees' good faith output, i.e. the bits they decide to sell.

Appellees argue that, even if the contract is an output contract, it is illegal and unenforceable because it violates Texas antitrust laws. Texas antitrust law makes unlawful any contract in restraint of trade or commerce. TEX.BUS. & COM.CODE ANN. § 15.05(a)

(Vernon 1987). The portion of the statute upon which appellees relied in their motion provides:

(c) It is unlawful for any person to sell, lease, or contract for the sale or lease of any goods, whether patented or unpatented, for use, consumption, or resale or to fix a price for such use, consumption, or resale or to discount from or rebate upon such price, *on the condition, agreement, or understanding that the purchaser or lessee shall not use or deal in the goods of a competitor or competitors of the seller* or lessor, where the effect of the condition, agreement, or understanding may be to lessen competition substantially in any line of trade or commerce.

TEX.BUS. & COM.CODE ANN. § 15.05(c) (Vernon 1987) (emphasis added). The italicized portion of this statute indicates that a contract is unlawful if it precludes the buyer from dealing in the goods of competitors of the seller. This section is inapplicable to the contract here because there is no condition limiting appellant's right to deal with any of appellees' competitors.

In conclusion, I would find that appellees failed to meet their burden of establishing that the contract does not give appellant the exclusive right to purchase appellees' used drill bits. Likewise, appellees failed to establish that the contract violates Texas antitrust laws. Therefore, I would sustain appellant's point of error, reverse the judgment, and remand the cause for trial.