MYRICK INV. CO. et al. v. AMICABLE
LIFE INS. CO.

No. 5648.

Court of Civil Appeals of Texas. Amarillo.
Oct. 23, 1944.

Rehearing Denied Nov. 27, 1944.

James O. Cade, of Lubbock, for appellants.

Crenshaw, Dupree & Milam, of Lubbock, and Witt, Terrell, Lincoln, Jones & Riley, of Waco, for appellee.

PITTS, Chief Justice.

This appeal is from an interlocutory judgment overruling appellant's motion to vacate an order appointing a receiver and to dissolve a temporary injunction.

Appellee, Amicable Life Insurance Company, a corporation, filed suit on May 16, 1944, against appellants Myrick Investment Company, a corporation, and the officers, directors, and stockholders of the same in their official capacities and individually, namely, Roberta N. Myrick, a feme sole, Russell Myrick and wife, Bernice Myrick, Walter A. Myrick, Jr., and wife, Margaret Myrick and Gertrude Triplett, joined by her husband, C. C. Triplett,. for the collection of two notes executed to appellee by appellants in the sum of $236,000 and $17,393.70, respectively, each bearing interest at the rate of five per cent per annum. The larger note was executed on October 15, 1940, payable in 216 equal monthly installments of $1,645.04 each, beginning November 15, 1940, with the last note maturing October 15, 1958. The smaller note was executed on January 15, 1943, payable in 189 equal monthly installments of $132.14 each, beginning February 15, 1943, with the last note maturing October 15, 1958. The smaller note was executed for money advanced by appellee to appellants to liquidate a debt appellants owed a Dallas bank and release a lien on the property in question. Both notes contained the usual provision for acceleration of maturity on default in the payment of any installment and contained the usual provision for ten per cent attorneys' fees. Both notes were secured by a deed of trust executed by appellants on certain property described therein, consisting of town lots situated in the town of Lubbock on which were located a six-story office building, tanks containing an oil supply and a heating plant for the said office building, and a warehouse.

Appellee alleged default in the payment of the notes and failure to pay the taxes as provided for in the deed of trust and declared the entire unpaid balance of the indebtedness in the approximate sum of $207,000, plus attorneys' fees, due and sought a foreclosure of its deed of trust.

It further alleged that a supplemental agreement was executed by appellants simultaneously with the execution of the deed of trust on October 15, 1940, authorizing the appointment of a trustee in the event of default in the payments and that on April 1, 1943, a trustee was appointed to take possession of and manage and control the property as provided for in the supplemental agreement but that appellants were threatening to interfere with the trustee's management and control of the property; that the deed of trust provided in the event of default the rentals accruing on the property should be payable only to the beneficiary and that a lien was created on the rentals in favor of appellee to secure the payment of the indebtedness; that the property described in the deed of trust was all the property Myrick Investment Company had; that it was insufficient to pay the debt and that the said company was insolvent or in imminent danger of insolvency; that the deed of trust provided that in the event of default or failure to perform the covenants therein contained, the holder of the indebtedness may take possession of the property described therein and upon filing of suit may have a receiver appointed to collect rents and manage the property pending the sale of the same to satisfy the debt; that such was necessary to preserve and protect the property, to keep the office building rented and collect the rents, to prevent the loss of revenues and that for all of said reasons appellee applied for a receivership and a temporary injunction.

Upon a presentation of the verified petition on May 16, 1944, the trial judge found that an emergency existed, appointed a temporary receiver without notice and granted a temporary restraining order enjoining appellants from interfering with the receiver's possession and control of the property and set the matter down for further hearing on May 19, 1944.

On May 18, 1944, appellants filed a motion to vacate the order appointing a receiver, to dissolve the temporary restraining order, and to dismiss the cause, alleging that by the execution of a supplemental agreement in 1943 the terms of the notes and deed of trust had been reduced, limited and modified so as to change the payments set forth in the notes; that the suit had been prematurely filed since there had been no default in the payments pro-

702

vided for in the notes and deed of trust under the new agreement and that no statutory grounds for a receivership had been established by appellee.

Appellee excepted to some parts of appellants' motions and pleadings and denied them generally.

On May 19, 1944, the trial court heard the issues raised, overruled appellants' motion to vacate the receivership, dissolve the temporary restraining order and dismiss the suit and continued the receivership and injunction in force, from which judgment of the trial court appellants perfected an appeal to this court. .

The record, briefs and written arguments are rather lengthy with 11 points of error and 7 counter points assigned, but a full analysis of the issues boiled down reveals that the only question to be determined is whether or not the trial court was justified under the facts and under the rules of law and equity in appointing a receiver and entering an injunction order. Appellants direct their attack on the receivership and make no complaint about the injunction order if the receivership is permitted.

■ The trial court found in the judgment that appellants had defaulted in the payment of the indebtedness as required by the terms of the notes and deed of trust, leaving a balance due on May 15, 1944, of $207,950.53; that they had defaulted in the performance of the covenants of the deed of trust and in the payment of the taxes on the property; that there was a need for supervision to keep the services of employees in having the building kept clean, the elevators and lighting conditions kept in proper order for use, and to keep the offices rented and collect the rents; that a cessation of proper supervision would result in material loss of rentals and income and thus depreciate the value of the said property, which the court found would probably be insufficient to satisfy the indebtedness held against it by appellee and that it was necessary to collect and impound the rentals and income from the said building pending the foreclosure in order that such rentals and income may be applied, if necessary, to any deficiency which may exist after the sale of the property in foreclosure. The presumption is that the trial court found all other facts not expressed in the judgment in support of the judgment.

The deed of trust sought to be foreclosed by appellee contained the following provision: "And to better secure the prompt payment of the aforesaid indebtedness the grantor in behalf of himself, his heirs, executors, administrators and assigns, herein expressly covenants and agrees with the trustee and beneficiary that during the existence of this lien he will do and perform and permit the following acts and things: (a) Pay all notes secured hereby and the accrued interest thereon promptly when due; (b) Pay not less than 10 days before the same becomes delinquent all taxes now assessed or that may in the future be assessed against the property above described. * * *" The deed of trust further provided that in the event grantor failed to make the payments as provided therein the beneficiary was authorized, at its option, to make any such payments and the grantor agreed to reimburse the beneficiary for any sums thus paid with interest thereon. Such advances by the beneficiary for such payments were authorized without waiving any rights as a result of the grantor's failure to make the said payments. The deed of trust further provided that if either of the notes or any of the accrued interest were not paid when due or if either of the covenants were breached by the grantor, that the beneficiary may, at its option, declare due and payable all of the indebtedness and the deed of trust also contains the following provision: "* * * and said beneficiary or said trustee, his substitute or successor, may take immediate possession of the property conveyed, with or without suit for that purpose, and upon filing suit, may obtain a receiver for the property and its rents pending sale hereunder." The deed of trust further provides that in the event of default in the payment of any of the principal or accrued interest of the said indebtedness or in the event of a failure to perform any of the covenants as required, all rentals accruing thereafter shall be paid to the beneficiary or to the holder of the debt.

■ We believe the evidence supports the finding of the trial court to the effect that appellants had defaulted in the payment of the indebtedness as required by the terms of the notes and deed of trust and in the performance of the covenants of the deed of trust for the following reasons: The credits appearing on the larger note and the testimony of the witness, Holt

Massey, show that the payments as made by appellants were not made in accordance with the terms of the said note; appellee served a notice in writing of date January 23, 1943, upon appellants stating that default in the payments had occurred and Mrs. Roberta N. Myrick, president of Myrick Investment Company, acknowledged receipt of a copy of the said notice and accepted the statement as true.

The uncontradicted evidence shows that all the taxes were delinquent on the property for the years 1942 and 1943 and that appellee paid the 1942 taxes with interest and penalty on February 28, 1944, in the sum of $4,896.26, and that the 1943 taxes, which were approximately $4,000 were still unpaid.

■■ The question of the value of the property was controverted, but the trial court was the judge of the credibility of the witnesses and of the weight to be given to their testimony. It found that there was a need for supervision of the office building; that the value of the property described in the deed of trust was insufficient to satisfy the indebtedness against it held by appellee and that it was necessary therefore to collect and impound the rentals and income from the property pending the foreclosure to apply on any existing deficiency after a foreclosure and sale of the property. We believe there was sufficient evidence of probative force to support such findings of the trial court and its findings are therefore binding on this court.

■ The deed of trust provided and appellants agreed therein that in the event either of the notes or any accrued interest was not paid when due or in the event all taxes were not paid at least 10 days before they became delinquent the beneficiary could, with or without notice to the grantor, declare all the indebtedness due and take immediate possession of the property, with or without suit, but "upon filing suit, may obtain a receiver for the property and its rents pending sale hereunder." Such a provision was not binding upon the trial court but should have been persuasive if reasonable grounds existed for the appointment of a receiver.

Article 2293, subdivision 2, Revised Civil Statutes, provides that a receiver may be appointed in a foreclosure action such as this when default has occurred and when the grantor has failed to perform the conditions of the contract and when the value of the property is probably insufficient to discharge the debt as has been found by the trial court in the instant case.

Subdivision 3 of the same article provides for the appointment of a receiver in such a case where a corporation is insolvent or in imminent danger of insolvency as was, in effect, found by the trial court in this case.

■ It has been held that appointment of a receiver is authorized in every case which comes within the provisions of the above statute without regard to the rules of equity authorizing such appointments. Friedman Oil Corporation v. Brown, Tex. Civ.App., 50 S.W.2d 471; Shaw v. Shaw, 51 Tex.Civ.App. 55, 112 S.W. 124.

The court held in a case similar to this, McMillan v. North American Building & Loan Ass'n, Tex.Civ.App., 75 S.W.2d 161, that the appointment of a receiver on a hearing after notice is largely a discretionary matter with the trial court and should not be disturbed unless abuse is clearly shown. Such a rule is approved in Bargaimes v. Coke et al., Tex.Civ.App., 86 S.W.2d 653, and Central Nat. Bank et al. v. Dallas Bank & Trust Co., Tex.Civ. App., 66 S.W.2d 474, and numerous other cases.

But appellants contend that the payments provided for in the notes, deed of trust, and supplemental agreement "were reduced, limited, and modified" by the execution of a new contract signed by appellee on January 25, 1943, and signed and approved by Mrs. Roberta N. Myrick, president of Myrick Investment Company, on April 12, 1943, and that no default in payments existed under the terms of the new contract.

The instrument relied upon by appellants to effect the modifications claimed is rather lengthy but, briefly stated, relates the facts about the execution of the notes, the deed of trust, and supplemental agreement, asserts that appellants have defaulted in their payments, serves notice of such on appellants, elects to appoint a trustee to take possession of the property and manage the same in accordance with the terms of the supplemental agreement and authorizes the trustee to pay out of the receipts collected expenses for management and operation, and then to pay $1,200 on the 15th day of each month to be applied on the indebtedness held by appellee and hold the remainder of the revenue, over

and above operating expenses and the said $1,200 monthly payments, until the close of the fiscal year on the first day of April of the next succeeding year when the surplus revenue would be applied on the indebtedness of appellee. The proof shows that at the close of the first fiscal year the revenue over and above the operating expenses and the payment of $1200 per month on the indebtedness was approximately $800, with unpaid taxes in the approximate sum of $4,000 outstanding for the said year. The total payments made for said year fell far short of the total annual payments provided for in the notes and deed of trust. Appellee elected to declare a further default in the payments and filed suit for foreclosure under the provisions of the deed of trust and asked for the appointment of a receiver.

■ As we interpret the terms of the instrument last above mentioned, it is a notice to appellants advising them of the default in the payments, of appellee's election to name a trustee, and of the manner in which the trustee should disburse the revenues. It does not constitute a rewriting of the terms of the notes and the deed of trust or the amounts necessary to be paid in order to prevent a default. It does not revoke any of the terms of the notes nor of the deed of trust. It does not propose to make any changes other than the manner of disbursing the revenues as provided for in paragraph 5 of the supplemental agreement.

Appellants complain that the trial court erred in excluding certain conversations, negotiations and correspondence had between the parties and their attorneys prior to the final execution of the instrument of date January 25, 1943. The conversations were had prior to January 25, 1943, and the letters written by the attorneys in the case and passed between them were dated February 10, 1943, and February 16, 1943, prior to the signing of the instrument by Mrs. Roberta N. Myrick for the appellants on April 12, 1943. The testimony was offered by appellants "to clarify and show the intent of the parties in making the contract, and further to show that there was

a mutual meeting of the minds, and to show the court what that meaning was, and what the actual intent of the parties was in making the contract."

The testimony was objected to by appellee on the grounds that there were no pleadings of fraud, mistake, or ambiguity that would authorize any testimony to vary the terms of the written instrument and that the intent of the parties must be determined by the written instrument itself.

Appellants seek by the evidence offered to enlarge the language contained in the instrument so as to effect a change in the monthly payments of $1,645.04 and $132.14, provided for in the respective notes, and reduce the same to $1,200 per month on both notes, with any surplus revenue accumulated at the end of the fiscal year to be applied on the indebtedness and they contend further that the conversations had and the letters written occurred contemporaneously with the execution of the contract and were admissible to explain the terms of the contract and the intention of the parties.

■ The presumption is that the trial court excluded the evidence because there were no pleadings to support the evidence and it found no ambiguity in the instrument. Appellants may have thought the payments were to be reduced, but we believe the terms of the instrument executed of date January 25, 1943, are unambiguous and do not affect or change the payments provided for in the notes and that the trial court properly excluded the testimony offered since there was no ambiguity and no pleadings of fraud, accident, or mistake to support such evidence. Murphy v. Dilworth et al., 137 Tex. 32, 151 S.W.2d 1004; Lewis et al. v. East Texas Finance Co. et al., 136 Tex. 149, 146 S.W.2d 977; 17 Tex. Jur. 791, sec. 352.

■ We believe the evidence supports the findings of the trial court and that the trial court did not abuse its discretion in appointing a receiver. We therefore overrule appellants' points of error and the judgment of the trial court is affirmed.