4 S.W.3d 219 (1999)
In re SOUTH TEXAS COLLEGE OF LAW and Texas A & M University, Relators.
No. 99-0830.
Supreme Court of Texas.
September 14, 1999.
John L. Hill, Jr., Roland Garcia, Jr., James E. Essig, Houston, Joseph Latting, Raul A. Gonzalez, Roy Q. Minton, David F. Minton, Austin, T. Gerald Treece, Houston, Douglas W. Alexander, Jane M.N. Webre, Poweres, Marcy H. Greer, Mary S. Dietz, Austin, Arno W. Krebs, Jr., Houston, Deborah A. Verbil, Austin, for petitioner.
Shannon W. Ratliff, Lisa A Paulson, Scott Steven Cooley, Austin, for respondent.
Petition for Writ of Mandamus Denied.
Justice HECHT, dissenting from the denial of the petition for writ of mandamus.
Relators in this original mandamus proceeding, South Texas College of Law and Texas A & M University, complain of the district court's refusal to allow them to supersede a judgment declaring their Affiliation Agreement to be void and permanently enjoining them from continuing to operate under it. Because I believe that relators are entitled to supersede the judgment, I respectfully dissent from the Court's denial of relators' petition.
In January 1988, South Texas and Texas A & M entered into an Affiliation Agreement to share certain resources, collaborate to their mutual benefit, and allow their names to be used jointly. Before signing the agreement, Texas A & M discussed some of its terms with the Texas Higher Education Coordinating Board but did not give the Board a copy of the agreement. The Board expressed no objection until after the agreement was signed. If the Board had raised a question about the agreement beforehand, Texas A & M would not have signed it. When the Board requested an Attorney General's opinion on the agreement's validity, South Texas sued the Board for a judicial declaration on the issue. Texas A & M intervened in the suit.
While the suit was pending, South Texas and Texas A & M continued to implement the Affiliation Agreement, and the Board did not attempt to enjoin them from doing so. All parties moved for summary judgment, and after a hearing in February 1999, the district court notified the parties of its decision on March 31, 1999. When South Texas indicated that it would continue to operate under the Agreement pending appeal, just as it had been doing during the litigation, the Board petitioned the district court for an injunction. After a hearing, the court rendered final judgment on August 3, 1999, declaring the Agreement to be "void because it exceeds the authority granted Texas A & M University in the Texas Education Code, and because its essential purpose violates public policy as expressed in the Texas Education Code." The court also enjoined South Texas and Texas A & M from operating under the Affiliation Agreement for the following reasons stated in the judgment:

*220 [T]he evidence presented to the Court establishes that the Affiliation Agreement has in fact caused confusion among the public in general, prospective, current and former students, and potential employers as to the precise relationship between South Texas College of Law and Texas A & M University. The creation of such a misleading and confusing situation constitutes irreparable harm which increases as the parties continue to operate under the Affiliation Agreement. Any harm South Texas College of Law and Texas A & M University may suffer due to this injunction was created by their own acts in implementing the Affiliation Agreement without obtaining the required approval from the Texas Higher Education Coordinating Board. South Texas College of Law and Texas A & M University presented evidence of the benefits to their respective faculties and student bodies to be derived from the Affiliation Agreement; however, it is not the province of this Court or of these two institutions to second-guess the legislative scheme as set out in the Texas Education Code for the coordination of public higher education in Texas. After balancing the equities in this cause, the Court finds irreparable harm will be suffered in the absence of this injunction, and that there is no adequate remedy at law.
The effect of the injunction is, of course, to deny South Texas and Texas A & M suspension of the judgment pending appeal.
South Texas and Texas A & M appealed and immediately requested the court of appeals to stay the judgment. The court of appeals denied the request without explanation, and South Texas and Texas A & M then petitioned this Court for mandamus relief. We stayed the judgment pending our review of the petition.[1]
As a rule, a judgment debtor is entitled to supersede the judgment pending appeal,[2] thereby suspending its enforcement.[3] This is true if the judgment is a permanent injunction.[4] Rule 24.2(a)(3) of the Rules of Appellate Procedure states that "[w]hen the judgment is for something other than money or an interest in property, the trial court must set the amount and type of security that the judgment debtor must post." Under the rule, the trial court has discretion to deny supersedeas only if the judgment creditor posts security for damages the judgment debtor may sustain pending appeal.
When, as here, the judgment creditor is a governmental entity that has no pecuniary interest in the case, a different rule, Rule 24.2(a)(5), applies. That rule states in pertinent part:
When a judgment in favor of a governmental entity in its governmental capacity is one in which the entity has no pecuniary interest, the trial court must determine whether to suspend enforcement, with or without security, taking into account the harm that is likely to result to the judgment debtor if enforcement is not suspended, and the harm that is likely to result to others if enforcement is suspended. The appellate court may review the trial court's determination and suspend enforcement of the judgment, with or without security, or refuse to suspend the judgment.
This provision, unlike Rule 24.2(3), gives the trial court discretion to consider the public's interest in enforcing the judgment pending appeal, as well as the judgment debtor's interest in suspension of enforcement.
South Texas and Texas A & M offered evidence, unchallenged by the Board, of economic and noneconomic harm likely to result from termination of operations under the Agreement. South Texas's president testified that efforts to implement the Affiliation Agreement included electronically interconnecting the libraries of the *221 two institutions, planning for joint degrees, furnishing information for planning joint programs, and planning and implementing faculty and student exchanges. He then summarized:
The cost of all that work, we estimate direct cost to be approximately $1,500,000 that we have expended already, which for a small school like ours with an $18 million annual budget, is a considerable amount of money, and all of that planning would be lost if the entire agreement were to be declared void. So we would have lost that. When you add indirect expenses to that, that's probably 2.2 million out-of-pocket that we would have lost already in implementation costs from our end. That does not include litigation costs at all.
He also testified that termination of operations under the Agreement would be a severe blow to student morale:
My opinion is that this would cause a tremendous morale shock in the student body and that we would have very discontented students, a number of whom believed that ultimately if this agreement were to work out, that their degrees would be enhanced, they would be injured. So our student body would suffer a terrible shock. For instance, if the library stuff had to go down, they would lose an enormous resource of research material. So there is a number of harms to students generally.
Faculty morale, too, would be affected; he testified:
The main asset a law school has is its faculty time and my faculty, a number of them have spent untold hours in planning these various [joint] combined degrees and programs and MBA executive programs and TV shows and working on the library interconnects. I would have lost all of that faculty time, which is enormous. It could have been involved in other research or other activities on behalf of the school. So it would have been an enormous loss of faculty time. And the result, faculty knows how important their time is and how much they have expended on this and how much they have put off other projects, so the faculty morale blow would be enormous.
Finally, the president testified that "to begin a project like this and announce an affiliation with a major university and then be told later it is a void agreement and illegal, that would injure our reputation."
The president of Texas A & M testified to similar harm to that institution if the judgment were enforced pending appeal. Also, an expert witness testified to the harm relators would suffer if the judgment were enforced and later reversed:
That's the worst case scenario, as far as I'm concerned because everyone has built up to this and it's been a major investment for both institutions. It's been something they have both wanted for a long time. It's been something they have been both deeply involved in at the board level and faculty level. If you then stop it and then go back to them and say okay, we are on again, folks, it just is not going to sell so well the second time around.
They will lose internal credibility, also. The morale, the willingness of people to step forward and go an extra mile, to be extracreative, to bring something new into their curriculum, to pick up the phone and start research projects, those are investments of the human spirit and you have asked people to do that once. Then if it's stopped, and my understanding is it might take six months, it might take a year or so before there would be a ruling one way or another at the appellate level. If it's then stopped and you go back to those people, they are going to forget where their notes are, they are not going to want to invest again. They have already done their enthusiasm on this project and it died. So getting them to restart it again is going to take maybe twice as much of an institutional investment to get it back going at the level it is now.
The evidence of likely harm to others from enforcement of the district court's judgment pending appeal is that people may be confused about the relationship between South Texas and Texas A & M *222 under the Affiliation Agreement. The evidence of such harm, according to the Board's response to the petition, is to be found, in its entirety, in the following testimony. The chair of the Board testified that in April 1998, while visiting with her daughter's college roommate's family,
I asked the mother, I said, "Well, tell me about your other children." And she said, "Oh, I have one son who attends South Texas College of Law," at which point the daughter and the husband both chimed in, "Oh, now Bonnie, you know that's now Texas A & M."
Later, in October 1998, the chair of the Board testified, she was again visiting her daughter when her roommate's brother came in
and he pulled out a cap and in big letters it said "Texas A & M" and in small letters it said "STCL," and I though that was interesting. I just commented, I said, "Where did you get the cap? It's interesting." And he said, "Oh, don't you remember? My brother attends that school." And I said, "Yes, it's interesting the way it's portrayed." And he said, "Oh, didn't you know A & M bought South Texas College of Law?"
When asked if any of these people with whom she had conversed had been injured or harmed by any confusion about the relationship between South Texas and Texas A & M, the Board chair answered, "I can't speak to that." Finally, the Board points to testimony of a political science professor at Southwest Texas State University, who recounted an incident in the fall of 1998 when a student told him he was applying to Texas A & M law school. The professor testified that when he told the student there was no such school,
the student produced something for me, and I don't remember what it was. It was either an envelope, a letter, or an application that had the names Texas A & M and South Texas College of Law on it.
Offhand, hearsay remarks by unnamed speakers, and a vaguely remembered ex-change with an unidentified student, no more than hint that anyone may be confused about the relationship between South Texas and Texas A & M under the Affiliation Agreement, and they are no evidence at all that anyone is likely to be harmed by such confusion. The Board chair admitted that she could not speak to whether the people she had talked to had been harmed, and the political science professor did not claim his student had been harmed. The Board states in its response in this Court that "current and potential law students being confused about the status of the relationship between South Texas and Texas A & M is evidence of harm", but nothing in the record supports this statement. The Board did not call a single student, or anyone else for that matter, to testify that he or she had been or would be harmed by any confusion about the relationship between South Texas and Texas A & M. More importantly, no evidence was adduced to the district court that any harm from continued operations under the Affiliation Agreement pending appeal would ever outweigh the economic and noneconomic injuries to South Texas and Texas A & M from enforcement of the district court's judgment. The district court must be afforded a measure of discretion in applying Rule 24.2(a)(5), but "[i]t is an abuse of discretion for a trial court to rule ... without supporting evidence."[5]
The district court did not find that the likely harm to relators by enforcing the judgment was outweighed by the likely harm to others but merely concluded that any harm to South Texas and Texas A & M was caused by their own acts in implementing the Affiliation Agreement. This conclusion is irrelevant to the weighing of harm required by Rule 24.2(a)(5), and it is correct only if the court's judgment is correct that the Agreement is void; if the judgment is overturned on appeal, denying South Texas and Texas A & M supersedeas will have been the cause of their harm.
The district court criticized South Texas and Texas A & M for operating under the Affiliation Agreement during the litigation when they should have recognized that the validity of the Agreement was in doubt:
*223 The Court notes that South Texas College of Law and Texas A & M University have continued to act under the Affiliation Agreement throughout this litigation as though the validity of the agreement were not in question. Yet, filing of this suit clearly establishes that South Texas College of Law recognizes that questions about the validity of the agreement exist, and Texas A & M University is clearly aware of its own lengthy history of unsuccessful bids to obtain authority for a law school. Texas A & M University may not obtain by private contract what has been denied it through proper regulatory and legislative channels. The Affiliation Agreement is in direct conflict with the statutory scheme set out in the Texas Education Code and the public policy regarding higher education embodied in that scheme and would render the role of the Texas Higher Education Coordinating Board meaningless. The Affiliation Agreement also purports to bind Texas A & M University to an exclusive relationship with South Texas College of Law that further treads on the authority of the Texas Higher Education Coordinating Board during the pendency of the agreement.
But the balancing of equities required by Rule 24.2(5) in determining whether to allow supersedeas must take into account that, whatever doubts were raised about the validity of the Agreement, neither the Board nor others attempted to enjoin implementation of the Agreement until after the district court announced its ruling. The Board's failure to pursue injunctive relief sooner does not, of course, preclude it from obtaining relief now, but absence evidence of any change in circumstances while the litigation has been pending, the Board's delay certainly undercuts its argument that any harm is likely to occur from continued implementation of the Agreement.
The court of appeals has agreed to expedite consideration of the appeal and has scheduled submission on oral argument for November 3, 1999. After South Texas and Texas A & M have operated under the Agreement for eighteen months, nothing in the record remotely supports prohibiting them from operating in the same way for several more months while their appeal is considered. The likely economic and noneconomic injury to two respected educational institutions that will be caused by immediate enforcement of the district court's judgment, and the resulting impairment of the cause of higher education in Texas, cannot be justified on the record before the district court.
Justice OWEN, concurring.
A trial court has rendered a judgment that, among other things, prohibits South Texas College of Law from including "Texas A & M" in its name. South Texas and Texas A & M University have appealed that judgment to the court of appeals, which has not yet decided the matter. The current proceeding before the Court does not concern the merits of that controversy. The only issue is whether, pending appeal, South Texas and Texas A & M are entitled to suspend the injunction issued by the trial court. Both the trial court and the court of appeals concluded that the injunction should not be suspended. I join in the Court's order announcing that it will deny the schools' petition. I write separately only to respond to the dissent. There is evidence that harm is likely to result to students who are currently attending South Texas, to students who decide to attend South Texas pending the appeal, and to those who contribute to South Texas on the basis of an affiliation with Texas A & M, if the injunction issued by the trial court is suspended and South Texas and Texas A & M are unsuccessful on appeal. On the other hand, the harm that South Texas will likely suffer if the injunction is not suspended is relatively slight. Accordingly, the Court should not suspend the judgment pending appeal. *224 The decision to deny suspension of the injunction pending appeal does not in any manner predict or prejudge whether the affiliation agreement between South Texas and Texas A & M is valid.

I
The rule of law that applies when a governmental entity has obtained an injunction and the losing party seeks to suspend the injunction pending appeal is Texas Rule of Appellate Procedure 24.2(a)(5). That rule requires courts to consider the harm that is likely to result to third parties, including the public, and the harm that is likely to result to parties to the litigation.[1]
The dissent contends that when Rule 24 is applied in this case, it compels this Court to issue a writ of mandamus and suspend the trial court's injunction pending appeal. I disagree. First, I do not believe, as the dissent suggests, that the Texas Higher Education Coordinating Board lulled South Texas or A & M into a false sense of security regarding the validity of the affiliation agreement between the two schools. The Board should not be estopped from seeking to enforce the permanent injunction that it obtained pending appeal. Second, the evidence of relative harm in this record does not augur in favor of interference with the lower courts' rulings. I turn first to the suggestion that the Coordinating Board's actions or inactions preclude suspension of the judgment pending appeal.

II
The affiliation agreement between South Texas and A & M was signed on January 23, 1998. Prior to that time, the schools had discussions with Leonard Rauch, who was then the chairman of the Texas Higher Education Coordinating Board, and with Don Brown, who was the Commissioner of Higher Education. Although Brown was told that an affiliation was under consideration, he was not made aware until after the agreement was signed that it would involve changing the name of South Texas to include "Texas A & M" or that joint degrees were to be awarded by the schools. Just twelve days after the agreement was signed, when Brown had been given the opportunity to see the agreement, Brown wrote a letter to the President of A & M, Ray Bowen, advising him of seven concerns "thus far." Those concerns included the use of the name "Texas A & M" in conjunction with the South Texas School of Law and the addition of the study of law to the A & M's stated mission and role as a state university. In his letter to Bowen, Brown clearly asserted his belief that the Texas Education Code proscribed at least the name change and joint degrees unless and until approval was obtained from the Coordinating Board or the Legislature.
About two months after the affiliation agreement had been signed, the Coordinating Board sought an opinion from the Attorney General regarding the legality of the agreement. That request prompted South Texas to file the underlying lawsuit to forestall an opinion from the Attorney General. Texas A & M intervened in the suit. The two schools nevertheless proceeded *225 to implement the affiliation agreement in spite of the Coordinating Board's opposition and the litigation.
The case was tried in 1999, and the trial court held that the affiliation agreement was void. The trial court granted permanent injunctive relief when it rendered its final judgment in August of 1999, and, as noted above, declined to suspend its judgment pending the appeal that South Texas and A & M are currently pursuing in the court of appeals. The court of appeals likewise denied the request of South Texas and Texas A & M to suspend the judgment. The court of appeals has set oral arguments for this November.
The dissent argues that the Coordinating Board's failure to ask for temporary injunctive relief pending a decision on the merits undercuts its argument that harm is likely to occur if the permanent injunction is suspended pending appeal. While I agree that failure to seek temporary injunctive relief may be factored into the equation when balancing the harm that is likely to occur, the failure to seek temporary relief, standing alone, should not be determinative or even given great weight. For the reasons to which I now turn, the evidence of harm in this record supports a denial of the suspension of the injunction.

III
Probability of success on the merits is not a factor to be considered under Texas Rule of Appellate Procedure 24.2(a)(5). Rather, the Court's task is to consider the relative harm that is likely to be suffered by South Texas and A & M, by the Coordinating Board, and by third parties.
The Coordinating Board called the president of South Texas, who is also its dean, as an adverse witness at the hearing on whether an injunction should issue and if so, whether that relief should be superseded. The dean testified that students who are now attending South Texas and students who would apply and enroll in the interim while the appeal is pending would be harmed if South Texas continues to include in its name "affiliated with Texas A & M University" and the two schools are then unsuccessful on appeal. The dean candidly testified that it is important not to mislead or confuse students. That is why, when the Higher Education Coordinating Board raised an objection to the affiliation agreement, South Texas took great care to notify all existing and potential students that the name it had been using, "South Texas College of Law of Texas A & M University," had been changed to "South Texas College of Law affiliated with Texas A & M University." The dean testified that South Texas was motivated in part to make the disclaimer "because of this long, uncertain interim period [during litigation] and [the] desire not to confuse any potential applicants." A reasonable inference can be drawn that if the appellate courts agree with the trial court that South Texas cannot use "Texas A & M" at all without approval from the Higher Education Coordinating Board or the Legislature, there will be confusion and students will be misled if "affiliated with Texas A & M University" is used pending the outcome of the appeal.
About 400 students have enrolled at South Texas since the affiliation agreement was signed. The dean of South Texas testified that unless the injunction is suspended, these students would suffer a "tremendous" and "terrible shock," that they would be "very discontented students," and that they would be injured because "a number of [them] believed that ultimately if this agreement were to work out, their degrees would be enhanced, they would be injured." Thus, South Texas students believe that their degrees will be more valuable because of an affiliation with Texas A & M. Reliance on the name of Texas A & M pending appeal is harmful to these students if South Texas does not prevail on appeal.
The dean of South Texas admitted that it is extremely important to his school to be able to use "Texas A & M" as part of its *226 name in attracting new students. The dean also described South Texas' recruiting brochure, which contains the application to "South Texas College of Law affiliated with Texas A & M University," as "our most important publication." Neither the brochure nor the application mentions the litigation or the possibility that on appeal, the trial court's determination that the affiliation agreement with A & M is void will be upheld. Again, the reasonable inference from this testimony is that students who would not otherwise desire to attend South Texas will be attracted to the school because Texas A & M is part of the name. The chairman of the board of South Texas agreed that it was "possible" that "students who came to the institution relying upon the existence of the affiliation agreement" would be harmed if South Texas' appeal is unsuccessful.
Finally, the dean of South Texas was forthright in explaining that unless prohibited by an injunction pending appeal, the school intends to use the affiliation with Texas A & M to obtain contributions and that if it cannot refer to the affiliation, its "ability to raise funds in the community" will be "adverse[ly] impact[ed]." Accordingly, the use of the name "Texas A & M" pending appeal will persuade some to contribute who would not have done so otherwise.
The trial court, the court of appeals, and this Court are required to consider under Texas Rule of Appellate Procedure 24.2(a)(5) the countervailing harm to South Texas and A & M if the injunction is not suspended. In my view, the harm suffered by those schools would be relatively slight if they are required to abide by the trial court's injunction but then prevail on appeal and are permitted to go forward with the affiliation agreement. There was evidence that South Texas will be required to "destroy a lot of paper stock, order new paper stock, business cards, letterhead, stationery, [and] signage." This is some evidence of harm, but only slight harm.
As noted above, there was also evidence that the level of contributions to South Texas would be affected and that some students may not choose to apply for admission to South Texas if it is not affiliated with Texas A & M. However, as also discussed above, that evidence is a double-edged sword.
South Texas will not, as the dissent suggests, suffer an irreparable loss of over two million dollars unless the injunction is suspended pending appeal. The testimony of South Texas officials makes clear that the investment of two million plus dollars by South Texas was primarily to create joint degree plans with Texas A & M and to link the libraries of the two schools electronically. But the degree plans, which had yet to be implemented when the injunction was issued, will still exist and could be implemented in the future if the appeal is successful. Nor does the injunction require severance of the interconnection between the libraries.
The dissent points out that there was testimony that South Texas' investment in the affiliation agreement would be permanently impaired if the judgment is not suspended and the schools are ultimately allowed to proceed with the affiliation. But the injury to South Texas described by that testimony is ephemeral at best. An expert opined that faculty members would not be as enthusiastic in the future. This "waste of the human spirit, and a loss of the belief that being flexible, creative and willing can make institutions stronger and better" pales in comparison to the harm that is likely to be suffered if students and potential contributors rely on South Texas' use of the name "Texas A & M."
The dissent observes that the dean of South Texas testified that "to begin a project like this and announce an affiliation with a major university and then be told later it is a void agreement and illegal, that would injure our reputation." But, when the trial court inquired: "And Dean, I assume that would be true even if I had granted your motion for summary judgment and then it went up on appeal and ultimately the agreement was found to be *227 void," the dean responded, "[t]hat's true." Even absent that admission, it is obvious from the testimony that some injury to South Texas' reputation has been sustained from the trial court's ruling on the merits. There is no evidence of how the harm will be lessened if the judgment is suspended pending appeal, particularly if the appeal is unsuccessful.
Finally I note that even before this mandamus proceeding was filed with the Court, the dean of South Texas sent written notice to the Commissioner of Higher Education addressed generically to "Dear Vendor/Professional Organization/Publication." That notice states, among other things, that the injunction issued in the underlying litigation enjoins "only the use of the name and the governance items of the contested agreement" and that "academic endeavors between the two schools continue." South Texas thus appears to have complied voluntarily with the parts of the trial court's injunction that South Texas claims will inflict irreparable injury unless the injunction is suspended.
In sum, based on the present record in this case, this Court should not grant a writ of mandamus suspending the trial court's judgment pending appeal.
NOTES
[1] 42 Tex. Sup.Ct. J. 1149 (Aug. 26, 1999).
[2] Tex.R.App. P. 24.1(a).
[3] Tex.R.App. P. 24.1(f) ("Enforcement of a judgment must be suspended if the judgment is superseded.").
[4] See Ex parte Kimbrough, 135 Tex. 624, 146 S.W.2d 371, 372 (1941).
[5] Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex.1998).
[1] Rule 24 provides in pertinent part:

RULE 24. SUSPENSION OF ENFORCEMENT OF JUDGMENT PENDING APPEAL IN CIVIL CASES
* * *
(5) For a Governmental Entity. When a judgment in favor of a governmental entity in its governmental capacity is one in which the entity has no pecuniary interest, the trial court must determine whether to suspend enforcement, with or without security, taking into account the harm that is likely to result to the judgment debtor if enforcement is not suspended, and the harm that is likely to result to others if enforcement is suspended. The appellate court may review the trial court's determination and suspend enforcement of the judgment, with or without security, or refuse to suspend the judgment. If security is required, recovery is limited to the governmental entity's actual damages resulting from suspension of the judgment.
Tex.R.App. P. 24.2(a)(5).