

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-17-00415-CV

———————————————

L SERIES, L.L.C.; CKDH, L.L.C.; VUE, L.L.C.; AND CKDH
INVESTMENTS, L.L.C., Appellants

V.

CONRAD HOLT, Appellee

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-289417-16

Before Kerr and Birdwell, JJ.[1]
Opinion by Justice Birdwell

---

[1]Justice Sue Walker was a member of the original panel but has since retired. Therefore, the two remaining justices decided the case. *See* Tex. R. App. P. 41.1(b).

# OPINION

When an entity's members collectively agree to provide a statutorily authorized and enforceable contractual right to the individual members in the entity's documents, and effective enforcement of that remedy curtails the entity's normal rights to appeal and supersedeas, whose interests should yield: the individual member's or the entity's? To answer that question, we examine and carefully balance the bedrock—and in this case competing—principles of freedom of contract and Texas procedural safeguards in a case of first impression for this court. Trial court plaintiffs L Series, L.L.C., CKDH, L.L.C., VUE, L.L.C., and CKDH Investments, L.L.C. (the Companies) appeal, and alternatively seek mandamus relief, from the trial court's order requiring them to advance to defendant Conrad Holt, a member of all of the Companies, his fees and expenses pending trial of their suit against him. Because the trial court's order is not one for which the legislature has authorized an interlocutory appeal, and because we conclude that mandamus relief is not warranted, we dismiss the appeal and deny the alternative request for mandamus relief.

## I. The Companies Sue Holt, Who Obtains an Order Requiring the Companies to Advance His Fees and Expenses Pending Trial

The underlying suit arose primarily from Holt's employment as the general manager of a group of Metroplex-area car dealerships—Arlington Saturn, Ltd., Fort Worth Saturn, Ltd., and Hurst Saturn, Ltd. (the Dealerships). Each of the Companies is a general partner of one of those Dealerships: L Series is Hurst Saturn's general

partner; CKDH is the general partner and one-percent owner of Fort Worth Saturn; and VUE is the general partner and one-percent owner of Arlington Saturn. CKDH Investments owns and leases the real estate occupied by the Dealerships. Holt has been a member of L Series, CKDH, and VUE since their formation in 2005 and a member of CKDH Investments since 2007. Holt was also a manager of CKDH Investments[2] and had served as the president of all of the Companies. As general manager of the Dealerships, Holt supervised salesperson Shawn Andrus.

In December 2016, the Companies and Dealerships sued Holt and Andrus,[3] claiming that from around 2014–2016, both of them had engaged in numerous types of fraudulent activity and "financial abuse" toward the Companies and Dealerships: fraudulently recording sales to receive bonuses from car manufacturers, fraudulently booking sales, making unlicensed insurance sales, and engaging in various kinds of financing fraud, to name a few. The Companies and Dealerships identified their causes of action against Holt as breach of the general manager's contract, breach of fiduciary duty, fraud, unjust enrichment, money had and received, aiding and abetting, assisting and participating, and civil conspiracy. Before suing, the Companies and Dealerships terminated Holt's and Andrus's employment and ordered Holt to stay away from the Dealerships' premises.

---

[2]CKDH Investment's Regulations provided that managers, rather than the members, would manage the entity.

[3]The Companies and Dealerships eventually nonsuited Andrus.

3

Holt answered and counterclaimed for breach of contract against all of the plaintiffs. After the Companies and Dealerships filed an amended petition adding factual allegations and a claim that Holt had breached his fiduciary duty to the Companies "due to his position as an officer/manager" of the Companies, Holt filed an amended counterclaim as well as third-party defendant claims not relevant here. In his amended counterclaim, Holt alleged that each of the Companies' Regulations entitle him to advancement of fees and expenses and indemnity for all of the claims against him. He alleged that the Companies had breached the Regulations by failing to provide him advancement and indemnity and refusing to make distributions to him. He also sought statutory indemnity and distributions. *See* Tex. Bus. Orgs. Code Ann. §§ 8.051(a), 101.203, 153.208(b). He further pleaded for money had and received and an accounting.

Almost a month after filing his amended counterclaim, Holt moved for partial summary judgment seeking a court order requiring the Companies to reimburse him for all fees and expenses he had already incurred in the suit and to pay him for future fees and expenses in the suit, in advance, on a monthly basis, in accordance with the Companies' Regulations. Holt alleged that the Companies and Dealerships had sued him because of his "position as president, manager, general manager, and/or officer," thus triggering the Companies' advancement obligations under the Regulations. According to Holt, that those advancement obligations were "neither dependent on the merits nor negated by [the Companies'] allegations of wrongdoing."

4

After a nonevidentiary hearing, the trial court granted Holt's motion and ordered the Companies to pay Holt's past "reasonable attorney fees and expenses" through November 1, 2017, and his "future reasonable attorney fees and expenses" on a monthly basis thereafter upon the submission of "summary invoices." The Companies filed a notice of interlocutory appeal, citing civil practice and remedies code section 51.014(a)(4), which permits an interlocutory appeal of an order granting or denying a temporary injunction. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4). After we questioned our jurisdiction over the appeal, the parties briefed the jurisdictional issue, which we carried with the appeal. If we determine that we do not have jurisdiction over the appeal, the Companies alternatively seek a writ of mandamus ordering the trial court to vacate its advancement order.

## II. No Interlocutory Appeal Lies From the Advancement Order

We have jurisdiction only over final judgments that dispose of all parties and issues in a case unless a statute authorizes review of a particular type of interlocutory order. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001); *Wyrick v. Jayson*, No. 02-18-00104-CV, 2018 WL 3385870, at *3 (Tex. App.—Fort Worth July 12, 2018, no pet.) (mem. op.). Civil practice and remedies code section 51.014 lists certain types of interlocutory orders from which a party may immediately appeal; among these is a trial court's order granting or refusing a temporary injunction. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4). The Companies contend that the trial court's order is a temporary injunction order—albeit an invalid one—appealable under

5

section 51.014(a)(4) because it (1) is immediately effective during the pendency of the underlying litigation and (2) commands the Companies to take certain actions. Although Holt argues that the Companies waived this argument by not raising it in the trial court, we are required to determine whether we have jurisdiction over an appeal and always have jurisdiction to do so. *Freedom Comm'ns, Inc. v. Coronado*, 372 S.W.3d 621, 624 (Tex. 2012); *Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007).

The advancement order does not comport with rules of civil procedure 683 and 684.[4] Tex. R. Civ. P. 683, 684. But according to the Companies, this lack of compliance does not mean that the order does not function as a temporary injunction, only that the order is an improper attempt to create an enforceable temporary injunction.

The Companies rely on the supreme court's opinion in *Qwest Communications Corp. v. AT&T* and other cases holding that an order functions as a temporary injunction when it compels certain conduct and "is made effective immediately so that it operates during the pendency of the suit." 24 S.W.3d 334, 336–37 (Tex. 2000); *Tatum v. Wells Fargo Home Mortg.*, No. 01-13-00855-CV, 2014 WL 7474074, at *11–12 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, no pet.) (mem. op.); *Helix Energy Sols. Grp. v. Howard*, 452 S.W.3d 40, 41 (Tex. App.—Houston [14th Dist.] Nov. 13, 2014,

---

[4]Thus, we may void the order if it is a temporary injunction. *See InterFirst Bank San Felipe, N.A. v. Paz Constr.*, 715 S.W.2d 640, 641 (Tex. 1986).

no pet.); *In re Robinson Family Entities*, No. 11-12-00258-CV, 2014 WL 4347838, *4 (Tex. App.—Eastland Aug. 29, 2014, no pet.) (mem. op.); *CLST Holdings, Inc. v. Red Oak Partners, LLC*, No. 05-10-00237-CV, 2010 WL 716490, at *1 (Tex. App.—Dallas Mar. 3, 2010, no pet.) (mem. op.). The Companies also distinguish *In re Aguilar*, 344 S.W.3d 41, 43–45 (Tex. App.—El Paso 2011, orig. proceeding), a mandamus proceeding in which the El Paso Court of Appeals granted relief from an order refusing to enforce a contractual right to advancement of fees and expenses pending trial.

In *Qwest*, AT&T sued for damages to its fiber optic cables and also sought a temporary restraining order (TRO) and temporary injunction. 24 S.W.3d at 335. Although the trial court granted a TRO, the parties resolved their pretrial issues at the temporary injunction hearing and read their agreement into the record. *Id.* That agreement (1) obligated Qwest to notify AT&T in advance of any construction operations within thirty feet of an AT&T underground facility and to electronically monitor the location of Qwest's drill borehead, (2) dissolved the TRO, and (3) left any damages claims pending. *Id.* The agreement expired after three years unless extended by the parties. *Id.* The trial court signed an order "following the terms recited into the record at the temporary injunction hearing." *Id.*

Qwest appealed the interlocutory order, but the court of appeals dismissed the appeal for want of jurisdiction, reasoning that the order was not a temporary injunction because (1) it did not preserve the status quo, require a bond, set a trial

date, or require the clerk to issue a writ of injunction and (2) the order was not limited in duration until final judgment or further court order. *Id.*

Citing law holding that a function of injunctive relief is to restrain motion and to enforce inaction, the supreme court held that the order was an injunction in its "character and function" because it "command[ed] Qwest to undertake certain monitoring and notice provisions when conducting certain boring operations." *Id.* at 336, 338. The supreme court rejected AT&T's argument that the lack of required features of a temporary injunction transformed the order into something other than a temporary injunction, *id.* at 336, reasoning that errors in the injunction's form did not change its underlying character and function, *id.* at 336–37.

Following the principles enumerated in *Qwest*, to determine the appealability of the trial court's order here, we must examine its character and function. To begin with, we note that the order here was not based on a pleading seeking injunctive relief, but rather was the result of a motion for summary judgment as a matter of law on one aspect of Holt's breach of contract counterclaims. Thus, although the order compels certain conduct during the litigation—the payment of fees and expenses pursuant to Holt's purported contractual right—it does so not as a merely temporary form of relief pending the outcome of the litigation but as complete relief on Holt's advancement breach of contract claim. The order does not contemplate any further action on the merits of that claim, i.e., Holt's entitlement to relief for the Companies' alleged breach of contract. These facts distinguish the character and function of the

advancement order from the orders in *Qwest*, *Tatum*, *Helix*, *Robinson Family Entities*, and *CLST*. *See El Caballero Ranch, Inc. v. Grace River Ranch, LLC*, No. 04-15-00127-CV, 2015 WL 6163221, at *3 (Tex. App.—San Antonio Oct. 21, 2015, no pet.) (mem. op.) (holding that, "[u]nlike a temporary injunction," the injunction in that case served "to implement the trial court's ultimate determination on the merits"); *Young v. Golfing Green Homeowners Ass'n, Inc.*, No. 05-12-00651-CV, 2012 WL 6685472, at *2 (Tex. App.—Dallas Dec. 21, 2012, no pet.) (mem. op.) (concluding that partial summary judgment granting permanent injunctive relief was not appealable as a temporary injunction).

Although advancement of corporate officials' expenses during litigation is a form of "immediate interim relief," it is a separate, contractual cause of action with the ultimate purpose of encouraging corporate service by protecting corporate officials' personal financial resources. *See Aguilar*, 344 S.W.3d at 46–47 (citing Delaware law in the absence of Texas cases concerning advancement because advancement has been described as a Delaware specialty and courts throughout the country look to Delaware for guidance on corporate law matters). Delaware courts treat a claim for advancement as an independent cause of action. *See Trascent Mgmt. Consulting, LLC v. Bouri*, 152 A.3d 108, 110 (Del. 2016) (describing advancement right as contractual right for corporate officials' benefit); *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 212 (Del. 2005) ("Although the right to indemnification and advancement are

9

correlative, they are separate and distinct legal actions. The right to advancement is not dependent on the right to indemnification.”).

The Companies argue that we should not consider how Delaware treats advancement claims because its law allowing advancement is more expansive than Texas's. *See* Del. Code Ann. tit. 6, § 18-108 (allowing indemnification by limited liability company subject only to the standards and restrictions in the company agreement), tit. 8, § 145(e) (allowing corporations to pay defense fees and expenses of officers and directors in advance of final disposition of suit). But Texas law is just as expansive: it provides that a limited liability company's governing documents may either adopt Texas's advancement provisions or “may adopt other provisions . . . relating to . . . advancement,” and that those other provisions “will be enforceable.” Tex. Bus. Orgs. Code Ann. § 8.002(b); *see also id.* § 101.402 (providing that a “limited liability company may . . . pay in advance or reimburse expenses incurred by a person,” defined as including a “member, manager, or officer” of the company). Thus, Texas allows a limited liability company the same broad freedom to craft its own advancement provisions as does Delaware. *See Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, No. 17-0578, 2019 WL 406075, at *11 (Tex. Feb. 1, 2019) (noting that Texas has “long recognized the strongly embedded public policy favoring freedom of contract” and acknowledging that courts must respect and enforce the terms of a free and voluntary contract “absent a compelling reason”).

Accordingly, although we apply Texas procedure, we have no qualms looking to Delaware law to inform our understanding of the nature of and policies underlying an advancement claim, as did the El Paso Court of Appeals in *Aguilar*, 344 S.W.3d at 46–47.

The Companies also contend that Delaware law is not persuasive because Texas has not adopted a summary procedure for advancement claims comparable to Delaware's, which vests its chancery court with exclusive jurisdiction to hear advancement and indemnity claims and authorizes that court to "summarily determine a corporation's obligation to advance expenses . . . [and] attorney's fees." Del. Code Ann. tit. 8, § 145(k). But the fact that Texas does not have a specific procedure to deal with advancement claims does not change the nature of the trial court's order here. In Texas, summary judgment is in itself a summary proceeding, *Aguilar*, 344 S.W.3d at 52, and is an appropriate procedure for determining a contractual claim as a matter of law, *see Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999); *Tri-County Elec. Coop. v. GTE Sw. Inc.*, 490 S.W.3d 530, 546 n.8 (Tex. App.—Fort Worth 2016, no pet.); *see also Morgan v. Grace*, No. Civ.A. 20430, 2003 WL 22461916, at *1 (Del. Ch. Oct. 29, 2003) (mem. op., not designated for publication) (holding that summary judgment is "an effective vehicle for deciding the advancement of legal fees" because the decision "turns on the application of the terms of the corporate instruments setting forth the purported right to advancement and the pleadings in the proceedings for which advancement is sought").

Regardless of whether we consider Delaware law on the nature of an advancement claim, the relief granted here is not dependent on the probability of success on a different cause of action and affords complete relief on the pleaded cause of action. Thus, although an order requiring advancement may share some of the characteristics of a temporary injunction order, it has a different underlying policy and purpose, as well as a different function. We therefore conclude that the trial court's advancement order is not appealable under section 51.014(a)(4). *See Gunderson v. Kristofek*, No. 05-18-00740-CV, 2018 WL 4346563, at *1–2 (Tex. App.—Dallas Sept. 12, 2018, no pet.) (mem. op.); *see also Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840–41 (Tex. 2007) ("We strictly construe [s]ection 51.014(a) as 'a narrow exception to the general rule that only final judgments are appealable.'" (quoting *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001))).

We are mindful of the supreme court's admonition in *Qwest* that "a burdensome interlocutory order that has the same effect as a temporary injunction could be shielded from appellate review by the very defect that makes it erroneous." 24 S.W.3d at 337. But to determine that the trial court's order granting complete relief after determining the merits of a cause of action has the character and function of a temporary injunction merely because it is effecting a contractual remedy that was designed to be effective during the pendency of a lawsuit—and was bargained for well in advance of contemplated litigation—would be to engage in the same type of erroneous analysis as did the court of appeals in *Qwest*. We decline to do so here.

Moreover, the remedy Holt sought and obtained—specific performance—functions as mandatory, permanent injunctive relief. *See S. Plains Switching, Ltd. v. BNSF Ry.*, 255 S.W.3d 690, 703 (Tex. App.—Amarillo 2008, pet. denied); *Mun. Gas Co. v. Lone Star Gas Co.*, 259 S.W. 684, 689 (Tex. App.—Dallas 1924), *aff'd*, 3 S.W.2d 790 (Tex. 1928).

Because neither section 51.014(a)(4) nor any other statute authorizes an interlocutory appeal of an order requiring advancement, we dismiss the Companies' appeal in disposition of their first two issues. But because the Companies also sought mandamus relief in the alternative, we will review the merits of their third through fifth issues—relating to the merits of the trial court's advancement order—under that standard of review.

### III. Mandamus Relief is Not Available Here Because the Trial Court Did Not Abuse Its Discretion by Ordering Advancement

#### A. Standard of Review

We grant the extraordinary relief of mandamus only when the trial court has clearly abused its discretion and the relator lacks an adequate appellate remedy. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding).

A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable that it is a clear and prejudicial error of law or when it fails to correctly analyze or apply the law to the facts. *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302–03 (Tex. 2016) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding); *see also State v. Naylor*, 466 S.W.3d 783, 793 (Tex. 2015) (orig.

proceeding) ("A writ of mandamus is an extraordinary remedy available 'to correct an action of a trial judge who commits an abuse of discretion or a violation of a clear duty under the law.'" (quoting *State v. Walker*, 679 S.W.2d 484, 485 (Tex. 1984) (orig. proceeding)). The relator must establish that the trial court could have reasonably reached only one conclusion. *H.E.B. Grocery*, 492 S.W.3d at 303 (citing *Walker*, 827 S.W.2d at 840). We defer to a trial court's factual determinations that have evidentiary support, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

## B. The Companies' Mandamus Arguments

The Companies claim in three issues that the trial court abused its discretion because

• their suit against Holt does not fall within the scope of the advancement provisions in the Companies' Regulations because they sued him for "his various bad acts" rather than his member status (third issue);

• the trial court could not order specific performance as a remedy because enforcing its order would require it to supervise a continuous series of acts over a long period of time (fourth issue); and

• the trial court's order improperly allows Holt to enforce an interlocutory judgment without giving the Companies the opportunity to supersede the judgment pending appeal (fifth issue).

**C. Scope of Advancement Provisions**

We construe the advancement provision in the Regulations under the normal rules of contract construction. *See Aguilar*, 344 S.W.3d at 49. Therefore, we must ascertain the true intent of the Companies' members as expressed in the Regulations, examining and considering the entire document to harmonize and give effect to all provisions so none are rendered meaningless. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). We construe them "from a utilitarian standpoint bearing in mind the particular business activity sought to be served." *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005). Additionally, we will avoid when possible and proper an inequitable, unreasonable, or oppressive construction. *Id.*

The advancement provisions in the L Series, CKDH, and VUE Regulations are identical. The provision in the CKDH Investments Regulations is substantially similar, and any differences do not change the result of our review.[5] Accordingly, we will refer to the common L Series, CKDH, and VUE provision in our analysis.

The identical advancement provisions—section 8.02 entitled Advance Payment—are included in Article VIII, entitled Indemnification, immediately following section 8.01 entitled Right to Indemnification. Section 8.02 refers back to section 8.01 and must be read in its entirety for that reference to make sense:

---

[5]Although that provision does not specifically state that the right to advancement is not dependent on a determination of the ultimate right to indemnification, it nevertheless describes the rights separately, so the same analysis applies.

15

The right to indemnification conferred in this Article VIII shall include the right to be paid or reimbursed by the Company the reasonable expenses incurred *by a Person of the type entitled to be indemnified under Section 8.01* who was, is or is threatened to be made a named defendant or respondent in a Proceeding [1] *in advance of the final disposition of the Proceeding* and [2] *without any determination as to the Person's ultimate entitlement to indemnification*; provided, however, that the payment of such expenses incurred by any such Person in advance of the final disposition of a Proceeding, shall be made only upon delivery to the Company of a written affirmation by such Person of his or her good faith belief that he has met the standard of conduct necessary for indemnification under this Article VIII and a written undertaking, by or on behalf of such Person, to repay all amounts so advanced if it shall ultimately be determined that such indemnified Person is not entitled to be indemnified under this Article VIII or otherwise. [Emphasis added.]

Thus, to be entitled to advancement, the person must be "of the type" entitled to indemnity, but no legal determination as to the person's right to indemnity need be made. We must therefore look to section 8.01 to determine what type of person the Companies may indemnify.

Section 8.01 provides that "each Person who was or is made a party [to a] pending or completed action, suit[,] or proceeding . . . , by reason of the fact that he or she . . . is or was serving at the request of the Company and an officer, trustee, employee, agent, or similar functionary of the Company shall be indemnified by the Company to the fullest extent permitted by the Act and the TBCA." The Companies acknowledge that Holt was serving as a member when they sued him, but they contend their suit is solely for ultra vires acts outside of his capacity as a member; therefore, because he would not be entitled to indemnity for such acts under section 8.01, he cannot be entitled to advancement under section 8.02.

16

The Companies' argument is based on this court's decision in *Ferrant v. Independent Order of Foresters*, in which we held that an officer against whom a fraternal benefit society obtained a judgment was not entitled to indemnification from the society. No. 02-16-00098-CV, 2017 WL 218287, at *1 (Tex. App.—Fort Worth Jan. 19, 2017, pet. denied) (mem. op.). The indemnification provision in that case provided that the Foresters would indemnify an officer who was "substantially successful in defending a civil, criminal, administrative, or investigative proceeding *to which he or she was made a party by reason of his or her position as director, officer, or employee*." *Id.* Ferrant argued that he was entitled to indemnification under this provision because the Foresters had obtained a jury award against him for much less than what it had originally sought. *Id.* at *2. The parties disputed whether the Foresters had sued Ferrant because of his position as an officer or because of his acts as an individual. *Id.* at *3–4. We examined the pleadings in that case—which simply alleged that Ferrant was an officer—but determined that the Foresters had sued Ferrant "because of his self-enriching acts that were outside the scope of (and contrary to) his position" and not because of his service as an officer. *Id.* at *4. We explained that to adopt Ferrant's position "would authorize indemnification of a director or officer for acts *that a jury has determined* to be unlawful and contrary to the interests of the organization." *Id.* (emphasis added).

Holt argues that the holding in *Ferrant* is not controlling because that case involved the right of indemnification rather than advancement. We agree that *Ferrant* is distinguishable.

Although the Companies argue that *Ferrant*'s plain-language analysis of the phrase "by reason of" dictates the same result in this case, the two cases are procedurally different. Ferrant's counterclaim for indemnity proceeded in a separate suit after a jury had already determined that he had misappropriated funds from the Foresters. *Id.* at *1. The Foresters filed a no-evidence summary judgment motion, and the only evidence Ferrant provided in response was that he had been an officer of a branch of the Foresters and that the Foresters had stated that fact in its petition. *Id.* at *2. We cited cases explaining that we should construe contracts to avoid an absurd result. *Id.* at *4.

But here, not only would it be absurd to construe the advancement provision in the Regulations to require Holt to prove as a prerequisite to his contractual right of advancement during the suit that he is a person ultimately entitled to indemnity, it would violate section 8.02's clear directive that the right to advancement is not dependent on a determination of the right to indemnity. *See Homestore*, 888 A.2d at 212–13 (noting that an advancement right that is not dependent on a proven indemnity right is greater than the indemnity right). To presume the Companies' allegations as proven at this stage would deny Holt the benefit of the advancement provision entirely. *See id.* at 214 ("The limited and narrow focus of an advancement

18

proceeding precludes litigation of the merits of entitlement to indemnification for defending one[]self in the underlying proceedings."). And at least one of the claims against him is dependent on his member and manager status: the allegation that Holt breached his fiduciary duty to the Companies "due to his position as an official manager."[6] *See id.* (holding that test for determining whether corporate official was sued "by reason of" her service is whether "there is a nexus or causal connection" between the suit and the person's official corporate capacity).

Delaware courts have acknowledged that advancement claims have an "admittedly maddening aspect." *E.g.*, *Reddy v. Elec. Data Sys. Corp.*, No. CIV.A. 19467, 2002 WL 1358761, at *5–6 (Del. Ch. June 18, 2002) (mem. op., not designated for publication). That is because when such a dispute ripens, "it is often the case that the corporate board has drawn harsh conclusions about the integrity and fidelity of the corporate official seeking advancement." *Id.* The board is therefore "reluctant to advance funds for [the corporate official's] defense, fearing that the funds will never be paid back and resisting the idea of seeing further depletion of corporate resources at the instance of someone perceived to be a faithless fiduciary." *Id.* But the Delaware courts have determined that to "give effect to this natural human reaction as public policy would be unwise" because the possibility exists that the company's allegations are untrue or cannot be proven. *Id.* at *6. As stated by one court, "In that

---

[6]The Regulations for L Series, CKDH, and VUE vested management authority in the members.

19

circumstance, it would be difficult to conceive of an argument that would properly leave [the corporate official] holding the bag for all of his legal fees and expenses"; moreover, to do so would make the company's prelitigation promise illusory. *Id.* Thus, Delaware courts have "often been required to uphold the indemnification and advancement rights of corporate officials accused of serious misconduct." *Id.*; *see Homestore*, 888 A.2d at 213–14; *Barrett v. Am. Country Holdings, Inc.*, 951 A.2d 735, 737 (Del. Ch. 2008) ("The very purpose of an advancement right is to enable a corporate official to protect herself against claims of official wrongdoing.").

Accordingly, that the Companies' allegations are for alleged misconduct does not change the nature of the right they bargained to give Holt. *See Homestore*, 888 A.2d at 214 (affirming Chancery Court's determination that former corporate official had been sued "by reason of" his service when suit by corporation alleged that he had participated "in a scheme to inflate [the corporation's] financial results while serving as an officer"); *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 406 (Del. Ch. 2009) (noting that "if the corporate powers were used or necessary for the commission of the alleged misconduct," then the official is entitled to advancement). The Delaware Chancery Court has lamented litigation arising from this very argument, admonishing that entities would be better served to carefully draft and narrowly tailor advancement rights:

> One wishes that the tsunami of regret that swept over corporate America regarding mandatory advancement contracts would have been followed by the more careful tailoring of advancement provisions, with a

diminishment (especially as to officers) of the mandatory term that seems to so bother directors faced with the responsibility of actually ensuring that the corporation honors its contractual duties once a (typically) former officer is sued or prosecuted for fraud or other serious wrongdoing. Although it is uncomfortable to cause the corporation to advance millions in fees to a former officer the current board believes engaged in serious misconduct, it does stockholders no service for a board to refuse to do so when the advancement obligation is clear. If the directors in such a situation truly wish to serve the stockholders, they should fix what they can by revising the corporation's advancement obligations on a going-forward basis. To breach a contract because you do not like its terms while refusing to change it when you have the authority to do so is hard to explain as an act of appropriate fiduciary fortitude.

*Barrett*, 951 A.2d at 747 & n.39 (also lamenting as regrettable that in a corporate case with protracted litigation over an official's entitlement to advancement, "the stockholders get it coming and going because of the corporation's refusal to honor mandatory advancement contracts").

Thus, we conclude that *Ferrant* is distinguishable and therefore not controlling here, and we find Delaware case law persuasive on this issue in the absence of Texas authority. Because at least some of the allegations in the suit are based on—and therefore causally connected to—Holt's service as a member and a manager of the

Companies,[7] the trial court did not abuse its discretion by holding that Holt was entitled to advancement under the Companies' Regulations.[8]

### D. Specific Performance

The Companies' fourth issue attacks the availability of specific performance as a remedy for Holt's claim that they breached their advancement obligations in the Regulations because they contend that present performance is impossible.

Specific performance is an equitable remedy, *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008), and is used as a substitute for monetary damages when such a remedy would be inadequate. *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 571 (Tex. App.—Fort Worth 2008, pet. denied). In determining whether a party is entitled to specific performance via injunctive relief, we consider whether (1) an adequate remedy at law exists, (2) present performance is possible, (3) the agreement contains precise terms capable of enforcement, and (4) the injunction comports with the terms of the agreement. *Free v. Lewis*, No. 13-11-00113-CV, 2012 WL 3242090, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 9, 2012, no pet.) (mem. op.); *Cytogenix,*

---

[7]The Companies have not argued that the advancement provision should be applied only to certain claims and not others or that the trial court should have ordered segregation of fees and expenses; therefore, we have not considered such an argument in our analysis.

[8]To the extent that the Companies' allegations depend on Holt's position as president of the Companies, he would also be entitled to advancement under section 8.02.

*Inc. v. Waldroff*, 213 S.W.3d 479, 487 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

In accordance with the second requirement, a court generally should not order future contractual performance by requiring a party to perform a continuous series of acts, extending through a long period of time, over which the court exercises its supervision. *Cytogenix*, 213 S.W.3d at 487–88; *Canteen Corp. v. Republic of Tex. Props., Inc.*, 773 S.W.2d 398, 401 (Tex. App.—Dallas 1989, no writ); *see also Tex. & Pac. Ry. v. City of Marshall*, 136 U.S. 393, 407, 10 S. Ct. 846, 850 (1890) (involving attempt to keep railroad located in Marshall, Texas, in perpetuity). But this is not a bright-line rule; a trial court may order a party to comply with the terms of its agreement over an extended time (1) in cases involving the public interest, *Lone Star Gas*, 259 S.W. at 690–91, (2) when that remedy is expressly authorized by statute, *Tex. Farm Bureau Cotton Ass'n v. Stovall*, 253 S.W. 1101, 1108 (Tex. 1923), or (3) when appropriate under a particular set of facts, *see White v. State*, 122 S.W.2d 714, 717–18 (Tex. App.—Fort Worth 1938, no writ). The court of appeals in *Lone Star Gas* explained almost a century ago why this is so, pointing out that although this rule was rigidly enforced in English courts of equity, it has been "greatly relaxed" in this country: "Courts of equity now consider more the results that might follow a denial of a decree for specific performance than the time and labor required of the court to enforce such specific performance." 259 S.W.2d at 690. Additionally, courts "look more to the

nature of the impending wrong and the extent and character of its consequences." *Id.* at 691.

Here, although the remedy is personal to Holt rather than the public-at-large, enforcement of the remedy by specific performance reinforces at least two important public policies: freedom of contract and the inducement of capable persons into corporate service while protecting their individual assets. *See Trascent Mgmt.*, 152 A.3d at 113; *Marino v. Patriot Rail Co.*, 131 A.3d 325, 342 (Del. Ch. 2015); *see also, e.g.*, *Bombardier*, 2019 WL 406075, at *11, *12 (discussing freedom of contract and noting that a party cannot rely on a contract in one aspect and defeat it in another). To delay enforcement of this remedy until after the suit has concluded would be to fly in the face of the contractual provision requiring that the remedy be effective in advance and, thus, would be tantamount to no remedy at all.

Moreover, we do not view the trial court's order as requiring constant supervision and rulings. The order requires Holt to provide summary invoices for repayment of reasonable fees and expenses incurred through November 1, 2017, and gives the Companies twenty days to either pay those invoices or object to them and request an expedited hearing. For future fees and expenses, the order requires the same procedure on a monthly basis. Although the order provides for an expedited hearing if disputes arise, which could require some trial court involvement, that involvement is necessarily limited to the duration of this suit. Because those proceedings would occur in the same court as the underlying suit, any concern about

the potential future "time and labor" of the court is overshadowed by the need to effectuate a remedy that would afford Holt the complete relief the Companies agreed to in advance. And the very nature of the relief afforded would militate against the Companies' making such challenges without exceptionally good cause, lest fees and expenses increase even more. *See Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 177 (Del. Ch. 2003) (noting that "the function of [an] advancement case is not to inject th[e] court as a monthly monitor of the precision and integrity of advancement requests" and warning that "[u]nless some gross problem arises, a balance of fairness and efficiency concerns would seem to counsel deferring fights about details until a final indemnification proceeding, by which time the [defendant might] be obligated to repay all of the funds").

Thus, we conclude that this order is of the type that is enforceable by specific performance.

### E. Supersedeas Right Waived by Contract

In their final challenge to the merits of the trial court's ruling, the Companies contend they are entitled to mandamus relief regardless of whether Holt is entitled to advancement under the Regulations because the trial court's order allows Holt to enforce his remedy without giving the Companies an opportunity to supersede its effect.

Section 24.1 of the rules of appellate procedure allows a party to supersede a judgment unless the law or the rules "provide otherwise." Tex. R. App. P. 24.1(a). The

right to supersede a judgment pending appeal is thus generally a matter of right, and mandamus or temporary relief may be warranted when a trial court denies that right after a final judgment. *See Man-Gas Transmission Co. v. Osborne Oil Co.*, 693 S.W.2d 576, 577 (Tex. App.—San Antonio 1985, order); *Weber v. Walker*, 591 S.W.2d 559, 562 (Tex. App.—Dallas 1979, orig. proceeding) (interpreting former version of rule 24.1.); *see also In re S. Tex. Coll. of Law*, 4 S.W.3d 219, 220 (Tex. 1999) (orig. proceeding) (Hecht, J., dissenting to denial of mandamus); *cf. Brown v. Faulk*, 231 S.W.2d 743, 746–47 (Tex. App.—San Antonio 1950, mand. overruled) (holding same with regard to appealable interlocutory order). But there are exceptions to this rule. *See In re Evans*, 401 S.W.3d 921, 925–26 (Tex. App.—Dallas 2013, orig. proceeding) (holding that in accordance with statutory framework mandating suspension of public official from office upon conviction and finding that the suspension was in the public interest, trial court could disallow supersedeas while conviction appeal was pending); *Hearn v. Cox & Perkins Expl., Inc.*, No. 14-98-01275, 2000 WL 977372, at *5 (Tex. App.—Houston [14th Dist.] May 18, 2000, mand. denied) (not designated for publication) (holding that person not meeting the definition of "judgment debtor" cannot supersede judgment).

Because an appealing party is typically entitled to supersedeas, the trial court generally cannot permit execution on an interlocutory order granting complete relief on a particular cause of action because to do so would destroy the nonprevailing party's supersedeas right. *See, e.g.*, *In re Burlington Coat Factory Warehouse of McAllen, Inc.*,

26

167 S.W.3d 827, 831 (Tex. 2005) (orig. proceeding); *In re Spiritas*, No. 05-16-00791-CV, 2017 WL 1281394, at *3 (Tex. App.—Dallas Apr. 6, 2017, orig. proceeding) (mem. op.); *In re Renz*, No. 03-15-00207-CV, 2015 WL 5315693, at *2 (Tex. App.—Austin Sept. 10, 2015, orig. proceeding) (mem. op.); *In re El Caballero Ranch, Inc.*, No. 04-14-00584-CV, 2014 WL 6687242, at *2–3 (Tex. App.—San Antonio Nov. 26, 2014, orig. proceeding) (mem. op.); *In re Khan*, No. 09-13-00382-CV, 2013 WL 5434624, at *1 (Tex. App.—Beaumont Sept. 26, 2013, orig. proceeding) (mem. op.); *In re Tarrant Cty.*, 16 S.W.3d 914, 918–19 (Tex. App.—Fort Worth 2000, orig. proceeding); *In re Baylor Coll. of Med.*, No. 09-01-00157-CV, 2001 WL 585688, at *1 (Tex. App.—Beaumont May 31, 2001, orig. proceeding) (not designated for publication). The courts will thus grant mandamus relief to correct this type of wrong.

The Companies argue that they are entitled to relief under this same theory. But the cases granting relief in similar circumstances did not involve a contractual right like the one here—a right specifically authorized by a statute mandating that such contractual provisions will be enforceable. *See* Tex. Bus. Orgs. Code Ann. § 8.002(b). And as we have explained, to give full and proper effect to that statutory and contractual right, it must be enforceable during the litigation, even if the order granting it is interlocutory. Parties routinely bargain away important procedural safeguards: (1) the right to trial by jury, *In re Prudential Ins. of Am.*, 148 S.W.3d 124, 129–33 (Tex. 2004) (orig. proceeding), (2) the right to maintain a suit in a more preferable forum, *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (orig.

27

proceeding), and (3) the right to appeal, *Prudential*, 148 S.W.3d at 142; *Estate of Crawford*, No. 14-17-00703-CV, 2017 WL 5196309, at *2 (Tex. App.—Houston [14th Dist.] Nov. 9, 2017, pet. denied) (mem. op.), among others. To require a trial court to wait until the advancement order becomes appealable before allowing Holt to enforce it would be to eviscerate the right for which he and the Companies bargained. In this case, then, the Companies' traditional right to supersedeas must yield in the face of the agreement to which they bound themselves. *See Tenn. Gas Pipeline Co. v. Technip USA Corp.*, No. 01-06-00535-CV, 2008 WL 3876141, at *16 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, pets. denied) (mem. op. on reh'g) ("We must enforce a contract as written, not as one party contends that, in hindsight, it intended for to have been written.").

And similarly situated litigants in the future will not be wholly without remedy. A party may file an original proceeding challenging an order granting or denying advancement. *See Gunderson*, 2018 WL 4346563, at *1; *Aguilar*, 344 S.W.3d at 44, 56; *cf. Laibe Corp.*, 307 S.W.3d at 316 (holding that a trial court abuses its discretion by failing to properly interpret or apply a contractual forum selection clause). Such a proceeding allows for relief in a much more expedited fashion than even an accelerated interlocutory appeal. *See In re Tex. Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 206–07 (Tex. 2002) (orig. proceeding) (op. on reh'g) (holding that mandamus is available to review temporary restraining order in violation of rule 680's time limitations because even accelerated appeal would take too long); *cf. In re Tex. Dep't of Family & Protective*

*Servs.*, 210 S.W.3d 609, 613 (Tex. 2006) (orig. proceeding) (noting that appeal is often an inadequate remedy to protect children's and parents' rights because in child custody cases justice demands a speedy resolution). And courts in other circumstances have found that appeal is an inadequate remedy to challenge an order requiring a party to pay attorney's fees in advance when that party did not contract to do so. *See In re Ford Motor Co.*, 988 S.W.2d 714, 723 (Tex. 1998) (orig. proceeding) ("[A]ppeal is not an adequate remedy when a court imposes a monetary penalty on a party's prospective exercise of its legal rights."); *Braden v. Downey*, 811 S.W.2d 922, 929 (Tex. 1991) (orig. proceeding) ("[S]o severe a penalty thus imposed raises the real possibility that a party's willingness or ability to continue the litigation will be significantly impaired."); *cf. In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 314 (Tex. 2010) (orig. proceeding) (recognizing that although mandamus review is "generally unavailable when a trial court denies summary judgment, no matter how meritorious the motion," it is nevertheless appropriate in certain circumstances, particularly to avert thwarting legislative intent by too strictly applying Texas's procedural devices).

Because we determine that the trial court did not abuse its discretion, we overrule the Companies' third through fifth mandamus-related issues. Thus, we need not address their sixth issue addressing adequacy of the right of appeal. *See* Tex. R. App. P. 47.1.

29

## Conclusion

Having determined that we lack jurisdiction over an appeal of the trial court's order, we dismiss the Companies' appeal. *See* Tex. R. App. P. 43.2(f). In addition, having determined that the trial court did not abuse its discretion in rendering that order, we deny the Companies' alternative request for mandamus relief. *See* Tex. R. App. P. 52.8(a).

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: February 28, 2019